**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Manuel Federico MADRID,
Defendant-Appellant.**

**Nos. 74–1851, 74–2296.**

United States Court of Appeals,
Fifth Circuit.

March 28, 1975.

Robert E. Kennedy, El Paso, Tex., (Court appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Ron Ederer, William B. Hardie, Jr., Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

WISDOM, Circuit Judge:

This case began on January 19, 1974 when Manuel Federico Madrid drove up to the permanent checkpoint maintained by the border patrol near White Sands, New Mexico. Traveling with him were two girls and a young child. Border patrol agents stopped his car for routine questioning about citizenship, and Madrid identified himself as a United States citizen. Asked about his passengers, he shrugged. They, when questioned by agents, admitted to being Mexicans, illegally in the United States. When asked how they happened to be in the car, they explained that Madrid had picked them up hitchhiking. They also added that Madrid was related to them by marriage. Madrid told essentially the same story, but denied being related in any way to his passengers. The agents released Madrid but detained the women for questioning.

Later, on further questioning, the girls changed their story. They explained that by prearrangement they had met a woman in Juarez, that she had accompanied them across a foot bridge over the Rio Grande, and, that after a bus ride to a suburban area, they had arrived at a house where they were met by Madrid. He was to drive them to Santa Fe, but their ultimate destination, they testified, was Chicago. Madrid, at trial, continued to assert that he had picked up the girls as they walked along the highway and that he did not know that they were aliens illegally in the United States. A jury nonetheless found him guilty of two counts of knowing transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(2). The trial court then revoked his probation and reinstated his sentence on a previous conviction of aiding and abetting aliens to elude examination by immigration officials.

■ On appeal, Madrid challenges his conviction and the revocation of his probation. First, he asserts that because venue was not properly laid in the Western District of Texas, the trial court erred in refusing to transfer the case to the Southern District of New Mexico. Venue, however, need only be proved by a preponderance of the evidence, and it is enough if venue may be inferred from all of the evidence presented. See United States v. Trenary, 9 Cir. 1973, 473 F.2d 680; Bellard v. United States, 5 Cir. 1966, 356 F.2d 437, cert. denied 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83. There was sufficient evidence here to support the conclusion that Madrid's passengers entered the United States at El Paso, Texas and that Madrid met them there.

■ He also contends that the trial court erred in admitting into evidence his prior confession, given in October 1973, to the transportation of illegal aliens. In that confession Madrid admitted that he had known that the twenty-six aliens in the trailer he was driving at the time of that arrest were illegal aliens. He explained, in the confession, that his part in that transaction was to transport the aliens from El Paso to Al-

---

* Senior Circuit Judge of the Tenth Circuit sitting by designation.

buquerque. From there another driver was to take them to Chicago. He admitted that on numerous prior occasions he had participated in transporting illegal aliens. His confession thus indicated that as recently as three months before the transaction forming the basis of the present prosecution, Madrid had been engaged in transporting illegal aliens from El Paso, Texas to north-central New Mexico. The prior offense, of which Madrid was convicted, was both recent and similar to the offense charged here. Admission of such evidence is a matter within the broad discretion of the trial court and is proper, where, as here, it is introduced not to show a propensity to commit crime but to show knowledge. United States v. Fonseca, 5 Cir. 1974, 490 F.2d 464; United States v. Bryant, 5 Cir. 1974, 490 F.2d 1372. See United States v. Broadway, 5 Cir. 1973, 477 F.2d 991. Knowledge is a necessary element of the crime defined by 8 U.S.C. § 1324(a)(2). Madrid's defense at trial was that he did not know that the girls he was transporting were illegal aliens. Furthermore, there is no merit to the argument that the trial judge, in his charge to the jury, failed to give adequately limiting instructions.

Madrid abandoned, on oral argument, his contention that the prior offense was so dissimilar to the offense charged below as to be inadmissible. He now contends that it was error for the court to admit into evidence the defendant's confession to that prior offense. This contention is without merit. Madrid made the statement in question after he had been given his *Miranda* warnings. Nothing suggests that it was not made voluntarily. There was nothing inherently improper in allowing it into evidence. See Reid v. United States, 9 Cir. 1964, 334 F.2d 915; Stewart v. United States, 9 Cir. 1962, 311 F.2d 109. Nor was there anything in the statement that was both prejudicial and irrelevant to the purpose for which it was introduced. Indeed, the statement added the "plain, clear, and convincing proof" of the prior similar offense and its circumstances that our case law requires. See United States v. San Martin, 5 Cir. 1974, 505 F.2d 918, 921–22. The need for such evidence did, we conclude, outweigh its possibly prejudicial effect.

■ Madrid also challenges the lawfulness of the stop and the admission of evidence obtained as a result of it. This was, however, a routine investigatory stop, and the checkpoint, although some forty miles north of the United States-Mexico border, was reasonably situated to intercept traffic, on Highway 70–82, bound northeast from border areas.[1] Three highways running north from the border or its immediate vicinity parallel the Rio Grande River. At Las Cruces, one road, Highway 70–82, heads northeast. The stop was made, the appellant conceded, at a "permanent checkpoint", as delineated in United States v. Hart, 5 Cir. 1975, 506 F.2d 887.[2] There this Court observed that the law of the Circuit holds that "permanent checkpoint searches of motor vehicles conducted as 'border searches' for aliens . . . meet the reasonableness standards of the Fourth Amendment." 506 F.2d at 892. On this authority we uphold the lawfulness of the challenged stop. The disposition we make of the foregoing points of

---

1. One of the border patrol testified:

It's a permanent checkpoint that was built by the White Sands Missile Range for the purpose of stopping all the vehicles traveling the Highway 70–82 in order to fire their missiles over the highway . . . It's approximately 250–300 yards long, approximately 50 yards wide. It's a pull-off area alongside the highway. It has warning signs which allow traffic—warn traffic there is a road block ahead. There are three of these signs approximately five feet by six feet in dimension. There's a large stop sign there approximately five feet high, and the checkpoint also is equipped with lighting systems and cones in order to have traffic pull over to the side of the road by the stop sign. . . . [T]his particular highway, 70–82, is frequently used for transportation of illegal aliens into the interior of the United States.

2. In United States v. Hart this Court discussed border searches in detail and compiled a complete list, by categories, of all the border searches the Court has decided in the last two years.

error relieves us of considering the appellant's contention that the trial court erred in relying on inadmissible evidence to revoke Madrid's probation.

The judgment of the trial court is affirmed.