**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Manuel Luis MAIZUMI, Jr.,**
**Defendant-Appellant.**

**No. 74–3853.**

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1976.

Stuart Nelkin, Charles J. Brink, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, B. Stephen Rice, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and NICHOLS,[*] Associate Judge.

AINSWORTH, Circuit Judge:

Manuel Luis Maizumi, Jr. appeals from his conviction of possessing with intent to distribute approximately 84 pounds of marihuana, in violation of 21 U.S.C. § 841(a)(1). Appellant contends that the search of his vehicle from which the contraband was seized was violative of his Fourth Amendment rights. We conclude, however, that the search was valid under the pre-*Almeida-Sanchez*[1] border-search doctrine applicable at the time of the search, and therefore affirm.

On February 7, 1973, at about 2 a. m., appellant, accompanied by a woman passenger, was traveling north on U. S. Highway 77 and stopped by U. S. Border Patrol agents at the U. S. Border Patrol checkpoint located approximately 12 miles south of Sarita, Texas. The occupants of the vehicle were questioned about their citizenship and replied that they were United States citizens. The window of appellant's vehicle was open and the Border Patrol agent detected the odor of marihuana. He also noticed that Maizumi appeared nervous. In response to the agent's request, Maizumi opened the trunk of the car which was sufficiently large to conceal an alien. The trunk contained three suitcases, one of which held the marihuana which was subsequently seized.

The search occurred at an established checkpoint,[2] prior to June 21, 1973,

---

[*] Of the U. S. Court of Claims, sitting by designation.

1. *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The decision establishes that a roving patrol search for aliens, without warrant, consent or probable cause, except at the border or its functional equivalents, violates the Fourth Amendment.

2. The Sarita, Texas checkpoint, which is placed at three different spots on U. S. Highway 77, a direct route leading from the border, *United States v. Merla,* 5 Cir., 1974, 493 F.2d 910, has been characterized as "perma-

the date of the *Almeida-Sanchez* decision. In *Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 6 (1975), the Supreme Court refused to apply the Fourth Amendment exclusionary rule to searches occurring at checkpoints prior to *Almeida-Sanchez.* Thus the search was valid.

■ We have examined the additional contentions of appellant and find them to be without merit. Appellant contends that his constitutional right to remain silent was violated by the prosecutor in cross-examining him relative to his silence at the time of arrest and again referring to his silence during final argument. Reference by the prosecution to a defendant's silence while under police interrogation can constitute reversible error under certain circumstances. *See United States v. Hale,* 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975). This, however, is not our case. The weakness in appellant's contention is that it misstates the facts. The record shows that although warned of his *Miranda* rights, appellant did not remain silent. To the contrary, the arresting officer testified that appellant said that the marihuana had been placed in his vehicle by a man named Dino whom appellant described as a small operator; that appellant further said that he was to deliver the marihuana to Houston for which he would be paid. At the trial appellant changed his story.

He testified that he was unaware of the presence of marihuana in the trunk of his car and that Dino, out of his presence, had placed it there. He denied making the statements attributed to him by the arresting officer. When asked on cross-examination why he did not tell his exculpatory story to the Border Patrol agent, he replied, "I decided he didn't look like he was believing me." It is a basic rule of evidence that prior inconsistent statements may be used for impeachment purposes. *United States v. Hale, supra,* 422 U.S. at 176, 95 S.Ct. at 2136, 45 L.Ed.2d 99. By voluntarily taking the stand, defendant was obliged to speak truthfully, and the cross-examination regarding his inconsistent statements constituted no more than utilization of the "traditional truth-testing devices of the adversary process." *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). The evidence being admissible, we find no error in the prosecution's remarks in argument referring to the inconsistent statements.

■ Appellant also takes exception to additional remarks made by the prosecutor in his closing argument. The remarks were responsive to defense counsel Brink's summation to the jury in which he buttressed the credibility of his client. Brink said, "I believe him [Maizumi], I think the boy has been used, and he is paying a pretty high price for it today." In closing argument the prose-

---

nent/temporary," *United States v. Hart,* 5 Cir., 1975, 506 F.2d 887, and "permanent," *United States v. Wooldridge,* 5 Cir., 1975, 508 F.2d 802; *United States v. Alvarado,* 5 Cir., 1975, 519 F.2d 1133. We need not belabor the points raised by appellant in regard to the validity of the search, i. e., that probable cause was lacking, that the operation at Sarita, Texas was in the nature of a roving patrol or at best a temporary checkpoint (citing *United States v. Diemler,* 5 Cir., 1974, 498 F.2d 1070, involving a different checkpoint, analogous in operation to that at Sarita), and that the district court improperly took judicial notice of a former opinion describing the operation at the Sarita checkpoint. Intervening decisions in which the Supreme Court declined to apply the Fourth Amendment exclusionary rule to

searches which had occurred prior to *Almeida-Sanchez,* regardless of whether the search had been conducted at a traffic checkpoint, *see Bowen v. United States, supra,* or by a roving patrol, *see United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), render discussion of such contentions purely academic. As we said in *United States v. Soria,* 5 Cir., 1975, 519 F.2d 1060, 1062, "The effect of the Court's decisions in *Peltier* and *Bowen* is to insulate all pre-June 21, 1973 immigration searches conducted within 100 miles of the border from constitutional challenge." These decisions "clearly establish that neither probable cause nor reasonable suspicion was required for a border search for illegal aliens before the date of the *Almeida-Sanchez* decision." *Id.,* n. 3.

cutor commented on Brink's remark, saying "And Mr. Brink was so convinced, why didn't he get on the stand and testify about that . . .. Why didn't Mr. Brink again get up here and testify as to what his own client supposedly told him? Because it is not the truth, ladies and gentlemen." No objection was made by defense counsel. We are not convinced that the prosecutor's comments, provoked as they were by defense counsel's equally improper remarks, constitute plain error. The error, if any, was harmless.

Finally, appellant contends that the court's unexplained delay between arraignment and trial (a period of 10½ months) was in violation of the Plan for the United States District Court for the Southern District of Texas for achieving prompt disposition of criminal cases. The Plan, adopted pursuant to Rule 50(b), Federal Rules of Criminal Procedure, is not inflexible and noncompliance therewith does not automatically result in dismissal.[3] None of the factors considered in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determination of whether a defendant's right to a speedy trial has been violated, were met. The delay *per se* was not unreasonably long;[4] it is not attributed to the Government; defendant failed to assert his right thereto, and the record is devoid of any actual prejudice resulting from the delay. We find no merit to this contention.

Affirmed.

---

**3.** *See United States v. Clendening,* 5 Cir., 1976, 526 F.2d 842.

**4.** A delay in excess of· five years between arrest and trial did not constitute deprivation of due process rights in *Barker v. Wingo, supra,* where no prejudice was shown and defendant did not assert his right to a speedy trial.