**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Henry Samuel ATKINS, Jr., Defendant-Appellant.**

**No. 75–2754.**

United States Court of Appeals, Fifth Circuit.

March 22, 1976.

Rehearing and Rehearing En Banc Denied April 21, 1976.

---

John H. Ruffin, Jr., Augusta, Ga., Fred H. Cohn, American Civil Liberties Union Foundation, New York City, for defendant-appellant.

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., Robert W. Vayda, Atty., Criminal Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, COLEMAN and GEE, Circuit Judges.

COLEMAN, Circuit Judge.

Appellant Henry Samuel Atkins, Jr., a practicing attorney, appeals from his jury conviction for wilfully and knowingly failing to report for and submit to an Armed Forces physical examination in violation of 50 U.S.C. App. § 462. We affirm the judgment of the District Court.

From September, 1962 to June, 1966, Atkins was in undergraduate school and was classified by the Selective Service as II–S. After graduation from college, Atkins entered the University of Georgia Law School and was again classified II–S until he completed law school in the summer of 1969. On July 24, 1969, the appellant was reclassified I–A.[1] Four

---

1. I–A classification means that a registrant is available for military service. 32 C.F.R. § 1622.2.

days later, Atkins wrote the local Selective Service board indicating that he felt he had been erroneously classified and that he deserved a III–A Hardship deferment based on the fact that he had a ten month old child and pregnant wife who would be placed in extreme hardship were he to be inducted into the armed forces. Thereafter, Atkins submitted affidavits and letters from friends and relatives attesting to his entitlement to a hardship classification and requested a personal appearance before the board.

On August 4, 1969, the board acknowledged receipt of appellant's letters and advised him that he would be considered for a hardship deferment. On August 11, 1969, Atkins was ordered to report for a preinduction physical examination, but the examination was postponed when Atkins informed the board that he had moved from Augusta and was now working and living in Thomaston, Georgia. On October 9 Atkins made a personal appearance before the local board in Augusta in reference to his claim for a III–A hardship deferment. Following the personal appearance, the board voted to deny the appellant's claim for a hardship deferment giving the following reasons:

> He claims extreme hardship. He has had a 2–S (not eligible for 3–A under Sec. 1622.30).
>
> He supported his wife while in college. He also has the Soldiers & Sailors Act for his indebtness [sic] of school expense.
>
> Wife & children can receive allotment.
>
> The registrant has very well fixed families both he and his wife. The wife and children will not suffer a hardship.
>
> Board members have personal knowledge of the family circumstances and feel that since both families are well able to support family [sic]. Hardship deferment denied.

Upon being informed of the board's action, appellant filed a notice of appeal on October 17, 1969.

The local board at Thomaston, Georgia, had rescheduled appellant's preinduction physical for October 21, 1969, but appellant failed to appear, stating that he had to return to Augusta for an emergency. Appellant's physical was rescheduled for December 1, 1969, but again he failed to appear. Atkins had informed the board on November 29 that he would not be able to appear for his physical examination on December 1 since he had to be in Tallahassee, Florida, that week to attend a mandatory course for new admittees to the bar.

On February 6, 1970, the Appeal Board denied Atkins' appeal and he was notified of this action a few days later. On February 18, 1970, Atkins requested that his classification be reopened due to a change in his status, namely the emotional depression and anxiety his wife had suffered since giving birth to their second child.

Atkins was ordered to report for a physical examination to be held on March 5, 1970, but once again failed to appear. The fifth and final order to report for a preinduction physical was issued to the appellant on April 8, 1970, with his reporting date set for the 16th of April. The appellant never appeared and his indictment for this failure eventually followed. Atkins wrote the local board on April 13 again requesting that his classification be reopened and also seeking assurances that he would not be inducted when he submitted to a physical examination. The board replied by letter on April 17 that a registrant is not inducted on an Order to Report for Physical Examination and informed appellant that his request for a change of classification had not warranted reclassification. Atkins was directed to go immediately to the nearest local board and request transfer for examination and was admonished that failure to comply could lead to prosecutory action. Atkins wrote the board on April 20, 1970, requesting that any further action by the board be postponed until he had an opportunity to confer with his attorney. Atkins wrote the board again on April 30, again claiming entitlement to a

III–A deferment and stating that he stood ready "to litigate this matter either as the plaintiff in a suit for an injunction or defendant in an action brought by the federal government". On September 18, 1972, the appellant was charged in a one count indictment for failing to report as ordered for an armed forces physical examination. Atkins had instituted a civil suit on March 15, 1971, seeking a declaratory judgment and a writ of mandamus to compel the local board to classify him III–A by reason of fatherhood.[2] The civil action was held in abeyance while cases with the identical issue were pending before the United States Supreme Court[3] and the Fifth Circuit Court of Appeals.[4] The civil action was dismissed on May 18, 1973, and no appeal was taken. The government had concluded that the criminal and civil suits were so interwoven that the criminal action should be stayed pending the disposition of the civil action, consequently the appellant was not arraigned until June 15, 1973. One week later, appellant was granted a 30 day continuance to attempt to enlist in some branch of the Service as an alternative to prosecution. Atkins' efforts to enter military service during the continuance allowed by the Court were without success. However, the United States Attorney delayed further action in order to allow Atkins to join some branch of the armed forces since he had expressed a desire to pursue that course. Intermittent reports of Atkins' efforts were received by the U. S. Attorney, but this came to nothing. Finally, the U. S. Attorney notified Atkins that unless entry into some branch of the armed forces was accomplished by June 15, 1974, his case would be set for trial. Trial was then set for September 30, 1974. On September 26, just prior to the scheduled

trial, a hearing was held on motions by the appellant to dismiss the indictment on grounds of the denial of a speedy trial. The District Judge denied the motion to dismiss but then stated that he was going to construe it as a motion for a continuance to allow the appellant the opportunity to participate in the newly established "Presidential Clemency Program", if he so desired. Trial was finally had on May 15, 1975, and resulted in a jury verdict of guilty from which the instant appeal was taken.

As we construe the appellant's assignments of error, we are asked to decide five questions. First, is the defense of an improper classification of a registrant by a local selective service board allowable in a prosecution for failure to report for a physical? And if so, was the appellant improperly classified? Second, was the trial court's denial of discovery of defendant's statement to the FBI an abuse of discretion? Third, was the appellant denied his constitutional right to a speedy indictment and trial? Fourth, did the trial court err in giving a modified "Allen charge"? Lastly, did the prosecutor make prejudicial remarks during his summation to the jury?

*Is the Propriety of a Registrant's Classification a Proper Defense to a Charge of Failure to Report for a Physical Examination?*

█ We are not here concerned with a failure to report for induction. Atkins was only charged with failing to report for and submit to a physical examination, and his conviction was for that offense only.

The appellant strongly urges that he was entitled to a III–A hardship classification and that the local board improper-

---

**2.** Appellant points out that this is to be distinguished from his additional claim to a III–A hardship deferment.

**3.** The Sixth Circuit had decided the issue in question adversely to the position taken by Atkins, and the Supreme Court subsequently denied certiorari. *See Gregory v. Hershey,* 6

Cir. 1971, 436 F.2d 513, *cert. den. sub nom. Gregory v. Tarr,* 403 U.S. 922, 91 S.Ct. 2229, 29 L.Ed.2d 701.

**4.** *Plotner v. Resor,* 5 Cir. 1971, 446 F.2d 1066, appeal vacated as moot, 5 Cir. 1972, 463 F.2d 422.

ly classified him I–A. He argues that if a board commits a substantive or procedural error during the classification process at such time that, had the error not occurred, the registrant could not have been ordered for the physical, then such error operates as a defense to a charge of failing to report for a physical examination. This precise issue has never been decided by this Court.[5]

In *McKart v. United States,* 1969, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194, the Supreme Court held that a registrant's failure to appeal his I–A classification and his failure to report for a preinduction physical examination did not bar his challenge to the validity of his classification as a defense to a criminal prosecution for refusal to submit to *induction* into the military. The government had argued that failing to report for a physical, thus giving the System a final chance to reject someone, should bar a challenge to the validity of a classification. The Court found this argument unpersuasive in cases involving a prosecution for refusal to submit to *induction,* but then went on to state:

> [A] registrant is under a duty to comply with the order to report for a physical examination and may be criminally prosecuted for failure to comply. If the Government deems it important enough to the smooth functioning of the System to have unfit registrants weeded out at the earliest possible moment, it can enforce the duty to report for pre-induction examinations by criminal sanctions. In the present case, it has not chosen to do so. Petitioner has not been prosecuted for failure to report for his examination; he has been prosecuted for failure to report for induction . . . .

395 U.S. at 201, 89 S.Ct. at 1667, 23 L.Ed.2d at 208 (footnotes omitted).

But, as we have seen, the Selective Service System has ample means to ensure that the great majority of registrants will report for their pre-induction examinations. . . . An invalid classification . . . would not be a defense today to a prosecution for failure to report for a pre-induction examination.

*Id.* at 203, *Id.* at 1667, *Id.* at 208.

Since Justice Marshall penned this language (dictum) in *McKart,* four circuits have had occasion to consider whether an invalid or improper classification is a proper defense to a charge of failure to report for a physical examination. The Second, Third and Eighth Circuits have consistently taken the position that improper classification is no defense to a charge of failure to report for a physical, *United States v. Rudd,* 2 Cir. 1973, 487 F.2d 367, 368; *United States v. Lawrence,* 2 Cir. 1973, 481 F.2d 1397; *United States v. Shriver,* 3 Cir. 1973, 473 F.2d 436; *United States v. Zmuda,* 3 Cir. 1970, 423 F.2d 757, cert. den., 1970, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545; *United States v. Dombrouski,* 8 Cir. 1971, 445 F.2d 1289, 1296–97. The Sixth Circuit had declared prior to *McKart* that even if a registrant was improperly classified I–A, he was still under a duty to report for a physical examination, *United States v. Irons,* 6 Cir. 1966, 369 F.2d 557, 558. The Ninth Circuit's position is not as clear, although its most recent decisions indicate that it too adheres to the position that improper classification is no defense to failing to submit to a physical, *United States v. Weislow,* 9 Cir. 1973, 485 F.2d 560, cert. den., 1974, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491; *United States v. Richardson,* 9 Cir. 1973, 484 F.2d 1046, *vac'd on other grounds,* 1974, 415 U.S. 971, 94 S.Ct. 1554, 39 L.Ed.2d 867; *United States v. Heinrich,* 9 Cir. 1972, 470 F.2d 238 (en banc), *cert.*

---

**5.** In *Moorman v. United States,* 5 Cir. 1968, 389 F.2d 27, 30–31, we held that intervening circumstances that placed the registrant in a different category within the same classification did not excuse his failure to report for a physical. In *Schutz v. United States,* 5 Cir. 1970, 422 F.2d 991, 994, we held that a registrant who claimed he had been called out of turn was still required to report for induction as ordered. We noted that wilful refusal to report for induction is a separate offense from that of refusing to be inducted after arrival at the induction center. *See also United States v. Taylor,* 5 Cir. 1974, 490 F.2d 442, 443 n. 1.

---

*den.,* 1973, 411 U.S. 909, 93 S.Ct. 1535, 36 L.Ed.2d 200; *United States v. Heywood,* 9 Cir. 1972, 469 F.2d 602.[6] The Ninth Circuit in *United States v. Brandt,* 9 Cir. 1970, 435 F.2d 324, did allow a defense of improper classification when the Court found the board's order to report for examination to be *unlawful.* Brandt was classified II–S and was entitled to that classification as a matter of law when the board, for no legitimate reason, reclassified him I–A. The Court found that the board acted in excess of its authority and reversed Brandt's conviction.

The reasoning given for not allowing improper classification as a defense to failing to submit to a physical is that the smooth functioning of the Selective Service System demands that unfit registrants be weeded out as early as possible. Even if a registrant is improperly classified I–A, there remains the distinct possibility that he will fail the physical and mental examinations and be placed in a lower classification, thereby eliminating any problems resulting from the improper classification. This winnowing of unfit registrants concomitantly reduces the number of criminal cases that courts must review. Furthermore, local boards are entitled to information as to the physical condition of registrants in performance of their duty to keep informed of the status of classified registrants. *See* 32 C.F.R. § 1625.1(c); *United States v. Kohls,* 9 Cir. 1971, 441 F.2d 1076, 1079, *cert. denied,* 404 U.S. 844, 92 S.Ct. 142, 30 L.Ed.2d 79.

■ We see no sound reason for disagreeing with the dictum in *McKart* and hold that an improper classification is not a defense to a prosecution for failure to report for a physical examination. We note that even if Atkins were allowed to interpose the impropriety of his classification as a defense to this prosecution, he would still have to show that there was *no basis in fact* for his classification, *Estep v. United States,* 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; *United States v. Turcotte,* 5 Cir. 1973, 487 F.2d 417; *Robertson v. United States,* 5 Cir. 1969, 417 F.2d 440 (en banc); *McCoy v. United States,* 5 Cir. 1968, 403 F.2d 896. Both the jury, and the trial court (in considering post verdict motions), found that there was a basis in fact for appellant's classification.

### *Was the Denial of Discovery an Abuse of Discretion?*

■ The appellant complains that he was denied a motion to discover certain statements he made to an FBI agent. Had he known the contents of the statement, appellant argues, he might well have chosen to take the witness stand in his own defense. Appellant continues that because of this denial of discovery he was denied the constitutional guarantee of effective assistance of counsel and that we should presume prejudice *per se.*

■ Atkins requested discovery of the statements at a pre-trial conference immediately prior to the empaneling of the jury, and the trial court in its discretion denied the motion. Rule 16(f) of the Federal Rules of Criminal Procedure,[7] in effect at the time of trial, provided that a motion must be made within 10 days after arraignment to be considered time-

---

6. In *United States v. Heywood, supra,* the Court made it clear that its opinion in *United States v. Hayden,* 9 Cir. 1971, 445 F.2d 1365 had recognized the general rule that improper classification is no defense to a charge of failing to report for a physical, *except* where a registrant is already classified I–O when ordered for a physical and subsequently is improperly classified I–A. That exception exists only because I–O registrants are deemed to have met physical requirements if they do not report for their physicals, and will not be ordered to active duty any way. *Heywood, supra,* 469 F.2d at 605. This exception is not present in the case at bar since the appellant never claimed I–O, conscientious objector status.

7. Rule 16(f) Fed.R.Crim.P. reads as follows:

(f) Time of Motions. A motion under this rule may be made only within 10 days after arraignment or at such reasonable later time as the court may permit. The motion shall include all relief sought under this rule. A subsequent motion may be made only upon a showing of cause why such motion would be in the interest of justice.

ly made. The trial judge may deny an untimely motion where the defendant has failed to show cause "why such motion would be in the interest of justice", *United States v. Newman,* 3 Cir. 1973, 476 F.2d 733, 739; *Hellman v. United States,* 5 Cir. 1964, 339 F.2d 36, 39; *United States v. Conder,* 6 Cir. 1970, 423 F.2d 904, 910, *cert. denied,* 1970, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267. The appellant in the instant case made his oral request for discovery approximately two years after arraignment. The government never called the FBI agent to testify, and had informed the appellant that they would advise him ahead of time if they decided to utilize his testimony. Under these circumstances, we can find no abuse of discretion by the trial court.

### Was Appellant Denied His Right to a Speedy Trial?

Appellant was indicted on September 18, 1972, was arraigned on June 15, 1973, and was tried on May 15, 1975. Appellant claims that the eight month delay in arraignment and the two and one-half year delay between indictment and trial mandate a reversal.

■ He argues that the eight month period between indictment and arraignment are in violation of the Plan for the Prompt Disposition of Criminal Cases Within the Southern District of Georgia [8] which requires that arraignment occur "within two (2) weeks after indictment . . . unless circumstances make arraignment impractical". The government counters that the eight month delay between indictment and arraignment was occasioned by their decision to postpone arraignment until the conclusion of appellant's civil suit in which the same issues were being litigated. The appellant was arraigned within one month from the decision in his civil action.

Judge Ainsworth recently wrote in considering the "Plan" for the Southern District of Texas, that these plans are "not inflexible and noncompliance therewith does not automatically result in dismissal", *United States v. Maizumi,* 5 Cir. 1976, 526 F.2d 848 [1976]; *see also United States v. Clendening,* 5 Cir. 1976, 526 F.2d 842 [1976]. We stated in *United States v. Rodriguez,* 5 Cir. 1974, 497 F.2d 172, 176 n. 3, that "the question to be resolved is whether, considering the public interest, alongside the defendant's extraplan rights, the delay is one that the purposes and the language of the Plan can tolerate". We note that the Georgia plan in the instant case requires:

> Upon receipt of notification from the Clerk or at the suggestion of any party that a time limit prescribed by, or as extended under, these rules shall have expired, the Court shall take appropriate action to determine the cause of delay and to remedy the same. Failure to comply with time limits set under this plan shall not otherwise affect the rights of the parties.

The appellant never informed the Court that the time limits for arraignment had passed or requested that he be arraigned. We believe that the government's decision not to arraign the appellant until after the resolution of his civil action does no violence to the District Court's plan and does not mandate reversal.

■ The appellant further contends that the two and one-half year overall delay between indictment and trial requires reversal.

■ *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, sets the standard to be applied in post-accusation delay [9] cases. The Court refused to establish a set period of time within which the government must try a defendant, instead establishing a balancing test. The four factors appropriate for consideration are: (1) the length of delay, (2) reason for delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting from the delay in bringing the defendant to trial, *Barker v. Wingo, supra,* 407 U.S. at 530,

---

**8.** Adopted pursuant to Rule 50(b) of the Federal Rules of Criminal Procedure.

92 S.Ct. at 2192, 33 L.Ed.2d at 117; *United States v. Duke,* 5 Cir. 1976, 527 F.2d 386, 388 [1976]; *Gravitt v. United States,* 5 Cir. 1975, 523 F.2d 1211, 1216.

The length of delay from the date of the offense until the date of trial is approximately five years. The period from the indictment until trial was approximately two and one half years. There were various reasons for the delay which are detailed in our statement of the facts *supra.* Basically, the delay between the reporting of appellant's offense to the U. S. Attorney in June, 1970, and his indictment in September, 1972 was the government's desire to await the outcome of litigation pending in the Fifth Circuit which concerned the same issues.[10] The bulk of the post-indictment delay resulted from the staying of the appellant's criminal action pending the resolution of his civil action, continuances and a postponement of action to allow appellant to enlist as an alternative to prosecution or to take advantage of the Presidential Clemency Program.

The defendant never asserted his right to a speedy trial until September 26, 1974. Since one of the grounds for his motion to dismiss then was that the President had proclaimed a clemency program, the Court construed the motion as one for a continuance, and the appellant did not object.[11] Appellant was tried soon after the expiration of the clemency program. The appellant's only assertion of prejudice is that the delayed pendency of the prosecution has affected his practice as an attorney and his personal life. When all these factors are weighed and balanced, the appellant's claim that he was denied a speedy trial is obviously lacking. There is no merit to this contention.

### The Allen Charge and Prosecutorial Comments

■ The appellant claims that the giving of what the Judge termed a modified Allen charge was error since the jury had only been deliberating ninety minutes and they seemed more confused than conscientiously deadlocked. The

---

9. Judge Morgan points out that the terms previously used by courts were pre and post indictment, but the proper terms now are pre and post accusation delay, *United States v. Duke,* 5 Cir. 1976, 527 F.2d 386, 388 n. 1 [1976]. The Supreme Court in *Dillingham v. United States,* 1975, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 held that the Sixth Amendment is activated whenever the defendant becomes an *accused,* either through arrest or otherwise, regardless of whether an indictment has been returned.

The record in the instant case does not reveal when, if ever, the appellant was arrested. Giving all benefit of doubt to the appellant, we assume the earliest he could claim that he became accused was when his case was reported to the U. S. Attorney on June 5, 1970. Thus, the total delay between accusation and trial would be approximately four years and eleven months.

10. See note 4, *supra.*

11. THE COURT: . . . I am telling you to state that you are either going to take advantage of it [the clemency program], you are not going to take advantage of it, or you don't know whether you are going to take advantage—he may know now, you see.

MR. RUFFIN: We stand on our previous position, Your Honor, which we have . . .

THE COURT: Well, what is it? Just state it. You don't know.

MR. RUFFIN: We have taken no position with regard to that.

THE COURT: In other words, you don't know whether he is going to take advantage of this or not?

MR. RUFFIN: That is correct, sir.

THE COURT: All right. In view of that, I am going to construe this to be a motion for a continuance, and if you object to it from that standpoint, I want you to state your objections into the record.

MR. RUFFIN: I don't think that I have any standing to object to it, Your Honor.

THE COURT: All right. I am going to construe this motion as a motion to continue until such time as he elects to come under the provision for—until January 31, 1975, has expired.

\* \* \* \* \* \*

MR. RUFFIN: Well, what I am indicating, Your Honor, in light of the fact that you have taken the motion as a motion for a continuance, we do not wish it to be construed by the Court that we are waiving any Constitutional rights.

THE COURT: No. I understand.

Appellant's Appendix, pp. 34–35.

appellant makes no arguments that have not been previously considered and rejected by this Court. The charge given was within the limitations established by our decision in *United States v. Bailey*, 5 Cir. 1972, 468 F.2d 652, *aff'd en banc*, 1973, 480 F.2d 518.

Appellant's final contention is that the prosecutor made prejudicial and inflammatory remarks which had a cumulative effect that was invidious, improper and unfair. We have reviewed these allegedly improper remarks and find nothing approaching the requirements for a reversal.

The Judgment of the District Court is Affirmed.