UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew B. BLOOM, Defendant-Appellant.

No. 75–3558.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1976.

Rehearing Denied Oct. 15, 1976.

Frank Maloney, Kenneth E. Houp, Jr., Austin, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Frederic Bennett, William L. Bowers, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

The appellant, Andrew B. Bloom, was convicted by a jury of possessing with intent to distribute and with distributing heroin on three separate occasions, in violation of 21 U.S.C. § 841(a)(1). Bloom was sentenced to fifteen years' imprisonment, to be followed by a special parole term of five years, and was fined $15,000. His appeal rests on claims (1) that several of the trial court's rulings and instructions with regard to evidentiary matters were erroneous; (2) that the court improperly refused to hold an evidentiary hearing to determine whether the Government's evidence was tainted by illegal wiretap activity; and (3) that the court erred in failing to dismiss his indictment for noncompliance with the maximum time limits established by the applicable plan promulgated under Rule 50(b) of the Federal Rules of Criminal Procedure for achieving prompt disposition of criminal cases. Finding these contentions to be without merit, we affirm the conviction.

## I. The Facts

The Government's case rested principally on the testimony of Vernon Oakum, an agent of the Drug Enforcement Administration, who contacted Bloom on numerous occasions in an undercover capacity while attempting to arrange the purchase of a two-pound quantity of heroin. According to Oakum's testimony, this large transaction was never consummated, but in the course of negotiations, three deliveries of smaller quantities of heroin were made. The first "buy" occurred after Oakum was introduced by an informer named Robert Durst to William Hooker Davis,[1] who in turn introduced Oakum to Bloom. Thereafter, Oakum arranged to meet the appellant at a liquor store in Houston, Texas, on January 20, 1972, where he purchased two ounces of what turned out to be low grade heroin for $1,400. Oakum subsequently complained that the heroin involved was not nearly as pure as it was represented to be, and was assured by Bloom that the quality of heroin in future dealings would be much better. Bloom and Oakum next met three weeks later at a Houston Holiday Inn, where Bloom provided Oakum with two heroin samples which were to be tested for quality, thereby effecting the second delivery. Finally, after numerous conversations and repeated delays resulting from difficulties Bloom encountered in arranging a new "connection," a meeting was arranged involving Bloom, Oakum, and a

---

1. Bloom was originally charged in a multi-count indictment together with Davis, his wife, Adell (Silvers) Bloom, and three other individuals, Ricardo Barrera, Ruben Garcia Vela, and Horacio Rangel. Bloom's case was ultimately severed and tried separately.

second undercover agent, H. T. Autry, at which thirty-two ounces of heroin were to be delivered. At the meeting, which occurred at Andrau Airport near Houston on March 24, 1972, Bloom claimed that he still did not have the thirty-two ounces, but gave Oakum a small representative sample, thus completing the third transaction. Subsequent phone calls attempting to work out delivery of the two-pound quantity ensued, but negotiations eventually broke off and the larger transaction never came to fruition.

No substantive evidence tending to rebut the testimony of Oakum and other government witnesses with regard to these incidents was introduced by the defense. Rather, defense efforts were aimed primarily at impugning the Government's evidence through cross-examination. In addition, Robert Durst was called in an apparent attempt to establish an entrapment defense, but this line of questioning was properly ruled irrelevant when it became apparent that a small quantity of heroin purportedly in the possession of Durst during the period of the investigation could not be linked to the transactions between Oakum and Bloom. Aside from Durst, no one was called to testify on Bloom's behalf.

## II. The Evidentiary Rulings

During the direct examination of agents Oakum and Autry, each was asked to describe the particular circumstances surrounding the negotiations and transactions in which he was involved. In the course of doing so, each mentioned that the discussions involved cocaine as well as heroin. Oakum's testimony, which was more extensive because of his deeper involvement in the investigation, also revealed that Bloom was engaged in procuring and marketing marijuana and had considerable prior experience in securing Mexican heroin for prospective buyers. Since Bloom's indictment charged him only with heroin violations, his counsel objected to admission of the references to prior trafficking in heroin and to dealings in other drugs each time such matters were mentioned.

The numerous purportedly erroneous evidentiary rulings and jury instructions which ensued fall into four categories: (1) rulings which simply admitted testimony concerning illegal conduct not charged in the indictment; (2) rulings which allowed the jury to consider such evidence subject to appropriate limiting instructions; (3) incidents where such evidence was introduced, but the jury was instructed to disregard it; and finally, (4) instructions which allegedly permitted the jury to draw improper inferences concerning the defendant's propensity to commit the crimes charged from the extrinsic evidence.

Rulings in the first category related to agent Oakum's testimony concerning discussions with Bloom after the first transaction. According to that testimony, Bloom had assured Oakum that he could supply higher grade heroin in the future, and that this would be secured from some unnamed Mexicans with whom he had been doing business for almost a year. Oakum also testified that Bloom mentioned he had received complaints from several of his customers about the quality of his heroin. Rulings and instructions in the remaining categories related to testimony from the two agents indicating that Bloom had suggested possible cocaine and marijuana dealings in the course of negotiating the heroin transactions. Typical of testimony in the second category is an exchange in which the Government was permitted to ask Oakum whether drugs other than heroin were mentioned on a specific occasion. After Oakum responded in the affirmative and recounted a conversation in which Bloom had alluded to marijuana and a new cocaine connection, the judge instructed the jury as follows:

Mr. Oakum is telling us that the defendant made statements to him about the defendant's dealings in marijuana or cocaine. You will bear in mind the defendant is not charged with dealing in

marijuana or cocaine. He is charged only with the several counts in the indictment that we read to you, which deal specifically with heroin transactions on given dates and times and places.

I am permitting this testimony to come in with the thought that it may tend to show, if you accept the testimony of this witness, a willingness of the defendant to deal in drugs generally, that it may lend support to the testimony of this witness that the defendant in fact dealt with heroin, to show that at the same time and during the same course of events, he either had or was willing to deal in these other drugs. You will please not hold against him the fact that he was dealing in other drugs, if you should so fine [sic], he is not charged with that. It is simply admitted as tending to clear up or elucidate the specific charges that were read to you and with which he is on trial here today.

Most of the other incidents fall into the third category, in which the court sustained defense objections to the mention of other drugs and issued prompt curative instructions such as the following:

Ladies and Gentlemen, this witness is telling us as to a conversation he had with the defendant in which Mr. Oakum tells us the defendant spoke of purchasing cocain [sic], marijuana, I believe, and possibly other narcotics other than heroin, and heroin is concerned with the counts in this indictment. I will ask you not to consider the admission of the testimony about dealing in other narcotics, if in fact he did make such an admission.

The fourth category relates mainly to a final instruction given by the trial judge just before the jury retired to consider its verdict:

Counsel has asked that I instruct you again at this time essentially as I did earlier, you remember that there were some references early in the testimony to a discussion or maybe more than one discussion between the Government agent and the defendant about the possible purchase and sale of marijuana and cocaine as well as heroin. I told you at that time that the defendant was not charged with any offense concerning marijuana or cocaine. You would consider that testimony, if. at all, only if it caused you to believe that such a person was more inclined to deal in heroin. If it had that effect, if you want to give it that effect, you may consider it, but only for that purpose and that alone.

Bear in mind he is not charged with marijuana offenses. He is not charged with cocaine offenses. And the testimony as to a discussion on those two substances, the evidence thereof will only be for the very limited purpose, if any, if you give it that weight, I should say, that such a person would also be inclined to deal in heroin.

In analyzing the propriety of the trial judge's actions in each of these categories, it should be noted at the outset that the evidence admitted formed an integral and natural part of the agents' accounts of the circumstances surrounding the offenses for which Bloom was indicted. As in *United States v. Nunez,* 5 Cir., 1967, 370 F.2d 538, 539, where we affirmed a conviction for possession of a sawed-off shotgun despite admission of testimony indicating the defendant was driving a stolen automobile at the time of his arrest, the evidence of Bloom's unindicted activities "was inevitably a part of the background facts surrounding the commission of the crime [charged] . . . ." 370 F.2d at 539; *see United States v. Watkins,* 5 Cir., 1976, 537 F.2d 826; *United States v. Lewis,* 5 Cir., 1976, 531 F.2d 1258, 1259. *See also United States v. Persico,* 2 Cir., 1970, 425 F.2d 1375, 1384, *cert. denied,* 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108; *Ignacio v. People of the Territory of Guam,* 9 Cir., 1969, 413 F.2d 513, 520, *cert. denied,* 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970). The evidence in question served merely to complete the agents' accounts of their dealings with Bloom, and was not introduced primarily to establish propensity to commit the crimes charged. Arguably, then, it is not the kind of evidence to which the general rule excluding evidence of other offenses applies.

Even assuming that rule is applicable, however, we conclude that it is not inconsistent with the District Court's evidentiary rulings in this case. As currently codified in Rule 404(b) of the Federal Rules of Evidence,[2] the rule provides merely that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Advisory Committee Note to this rule stresses that "[n]o mechanical solution is offered" to the problem of determining when the exceptions come into play, and that "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403 [which deals with the general issue of relevance]." The legislative history of Rule 404(b) makes it clear that broad discretion in this regard is vested in the trial judge. As the House Committee Report on this provision notes,

> The second sentence of Rule 404(b) as submitted to the Congress began with the words "This subdivision does not exclude the evidence when offered". The Committee amended this language to read "It may, however, be admissible", the words used in the 1971 Advisory Committee draft, on the ground that *this formulation properly placed greater emphasis on admissibility* than did the final Court version.

(Emphasis added.) 1974 U.S.Code Cong. & Admin.News pp. 7075, 7081. Of course, as noted in the parallel Senate Committee Report,

> the use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not

intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.

1974 U.S.Code Cong. & Admin.News pp. 7051, 7071.

The principle enunciated by Rule 404(b) coincides with and is further clarified by prior Fifth Circuit decisions. As stated in our cases, evidence of acts extrinsic to the crime charged is admissible under the itemized exceptions once the trial court is satisfied that certain threshold prerequisites have been met. As formulated in *United States v. San Martin*, 5 Cir., 1974, 505 F.2d 918, 921–22, these are:

> 1. Proof of the prior *similar* offenses must be "plain, clear and convincing;"
>
> 2. The offenses must not be too remote in time to the alleged crime;
>
> 3. The element of the prior crime for which there is a recognized exception to the general rule, such as intent, must be a material issue in the instant case;
>
> 4. There must be a substantial need for the probative value of the evidence provided for by the prior crimes.

(Emphasis in original.)

The evidence in question here is covered by a number of the exceptions specified in Rule 404(b). It relates to preparation to commit the crimes charged, *see, e. g., United States v. Leftwich*, 3 Cir., 1972, 461 F.2d 586, 589, *cert. denied*, 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178; *United States v. Persico*, 2 Cir., 1970, 425 F.2d 1375, 1384, *cert. denied*, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108; *Ignacio v. People of the Territory of Guam*, 9 Cir., 1969, 413 F.2d 513, 519–20, *cert. denied*, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970), to intent and knowledge, *see, e. g., United States v. Urdiales*, 5 Cir., 1976, 523 F.2d 1245, 1247; *United States v. Madrid*, 5 Cir., 1975, 510 F.2d 554, 556; *United States v. Fonseca*, 5 Cir., 1974, 490 F.2d 464, 469; *United States*

---

2. The Federal Rules of Evidence became effective on July 1, 1975, approximately one month prior to Bloom's trial, which commenced on August 4, 1975.

*v. Bryant,* 5 Cir., 1974, 490 F.2d 1372, 1377; *Weiss v. United States,* 5 Cir., 1941, 122 F.2d 675, 682, *cert. denied,* 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1942), and to predisposition, which is relevant to rebut an entrapment defense. *See, e. g., United States v. Tyson,* 1972, 152 U.S.App.D.C. 233, 470 F.2d 381, 384, *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973).

Turning to the threshold prerequisites for applying these exceptions as outlined in *San Martin, supra,* it is apparent the extrinsic evidence of heroin, cocaine, and marijuana dealings was "plain, clear, and convincing" related to offenses similar in nature and proximate in time to those with which Bloom was charged. Knowledge, intent, predisposition, and preparation were material issues in establishing the Government's case. And finally, the evidence was substantially needed for its probative value at least "to the extent that material prejudice to the defendant [was] outweighed." *United States v. Urdiales,* 5 Cir., 1975, 523 F.2d 1245, 1247.

Having determined that these factors are present, the trial judge must balance the probative value of the evidence of extrinsic bad acts against its possible prejudice to the defendant. *United States v. Lewis,* 5 Cir., 1976, 531 F.2d 1258, 1259; *United States v. Nill,* 5 Cir., 1975, 518 F.2d 793, 802. As indicated by the discussion of the legislative history of Rule 404(b), *supra,* this balancing is left largely within the sound discretion of the lower court. *United States v. Crockett,* 5 Cir., 1975, 514 F.2d 64, 72; *United States v. Madrid,* 5 Cir., 1975, 510 F.2d 554, 556; *United States v. Cochran,* 5 Cir., 1974, 499 F.2d 380, 388, *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825; *United States v. Rodriguez,* 5 Cir., 1973, 474 F.2d 587, 590. We find no abuse of such discretion in the present case.

Our review of the District Court's challenged evidentiary holdings persuades us that the extrinsic evidence admitted in this case differs markedly from that held to have been erroneously admitted in the cases principally relied upon by appellant. Unlike the evidence of a prior conviction of simple possession of illicit whiskey in *United States v. Miller,* 5 Cir., 1974, 500 F.2d 751, 762, it cannot be said that the extrinsic evidence in the present case has "precious little to do with the state of mind involved in [the crime charged, *i. e.,* in *Miller*] conspiracy with intent to defraud or carrying on the business of a distiller with intent to defraud." Here, Bloom's willingness to deal in a variety of controlled substances and his avowed experience in such transactions had a direct bearing on his *mens rea* with respect to distributing heroin and possessing it with intent to distribute as charged.

This case is also unlike *United States v. San Martin,* 5 Cir., 1974, 505 F.2d 918, 921–23, where the improperly introduced evidence as to prior crimes involved three convictions committed several years earlier (two as a juvenile). Here, the extrinsic evidence related to heroin and other drug transactions that were similar in nature and proximate in time to those involved in the indictment.

Finally, this is not a case such as *United States v. Goodwin,* 5 Cir., 1974, 492 F.2d 1141, 1151–55, in which there was a substantial possibility that undue prejudice may have resulted from improper admission of extrinsic evidence. Goodwin's principal defense was that he was not the John Goodwin named in an indictment for importation of 1000 pounds of marijuana issued several months prior to his arrest. Given the quantity of marijuana involved, there could be little question about intent if the identity issue was resolved against him. Nonetheless, Customs agents were allowed to testify at trial concerning their seizure of 3000 pounds of marijuana incident to his arrest, on the ground that this information was germane to the issue of intent. In light of the fact that the in-court identifications of Goodwin were shaky, and particularly in view of the limited need for the extrinsic evidence on the intent issue, there was a substantial danger that the testimony concerning the 3000-pound shipment may have impermissibly quieted reasonable doubts in the minds of the jurors about Goodwin's

identity.[3] No parallel danger exists in the present case.

Particularly in light of the trial judge's repeated efforts to instruct the jury either not to consider extrinsic evidence at all or to consider it only for the very limited purpose of assessing Bloom's willingness—*i. e.,* his intent or predisposition to commit the crimes charged—it is important to remember that improper admission of such evidence may be cured by appropriate limiting instructions. *See, e. g., Driver v. United States,* 5 Cir., 1971, 441 F.2d 276; *McBride v. United States,* 10 Cir., 1969, 409 F.2d 1046, 1048, *cert. denied,* 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240. Appellant makes much of the fact that the final instruction to the jury on this topic, as well as one earlier instruction, suggests that the jury may consider evidence of extraneous criminal activity "only if it caused you to believe that such a person was more inclined to deal in heroin" and only if it demonstrates "a willingness of the defendant to deal in drugs generally." The thrust of appellant's argument in this regard is that these instructions improperly allowed the jury to infer guilt from the defendant's propensity to commit the crime charged. *See United States v. Arias-Diaz,* 5 Cir., 1974, 497 F.2d 165, 170; *United States v. Cisneros,* 5 Cir., 1974, 491 F.2d 1068, 1077–78; *cf. United States v. Garber,* 5 Cir., 1972, 471 F.2d 212, 217 (prosecutorial comment on other crimes). In analyzing the impact of jury instructions, however, it is important that they be construed not in isolation, in a piecemeal fashion, but in the context of the entirety of the judge's instructions in the trial taken as a whole. *Bolden v. Kansas City Southern Railway Co.,* 5 Cir., 1972, 468 F.2d 580, 581; *Troutman v. Southern Railway Co.,* 5 Cir., 1971, 441 F.2d 586, 590;

*Delancey v. Motichek Towing Service, Inc.,* 5 Cir., 1970, 427 F.2d 897, 901; *Lyle v. R. N. Adams Const. Co.,* 5 Cir., 1968, 402 F.2d 323, 327; 9 C. Wright & A. Miller, Federal Practice and Procedure § 2558, at 668 (1971). Taken in context, the trial judge's instructions made it clear that any references in the testimony to extraneous criminal activity could be considered, if at all, for the limited purposes countenanced by Rule 404(b).

Finally, in view of the overwhelming evidence of Bloom's guilt, any error with regard to evidence of other crimes was harmless. *See United States v. Roland,* 5 Cir., 1971, 449 F.2d 1281, 1282; *Driver, supra; McBride, supra; cf. United States v. Bell,* 5 Cir., 1976, 535 F.2d 886 (prosecutorial comment on other crimes evidence was harmless error).

### III. Purported Illegal Wiretap Activity

■ Appellant's second major allegation of error concerns the District Court's refusal to conduct an evidentiary hearing to determine whether the Government's evidence was tainted by illegal wiretap activity. At the time of appellant's trial, public attention had been drawn by numerous newspaper articles to investigations which revealed a number of wiretap operations on the part of narcotics squads of the Houston Police Department. Since these squads often collaborate with federal drug enforcement officials, it has become a relatively routine strategic ploy in narcotics cases in the Houston area for defendants to attempt to raise the issue of possible wiretapping.

In the present case, Bloom had no actual evidence which could plausibly suggest that information used against him during the course of the investigation leading to his

---

**3.** The "identity" exception to the rule proscribing circumstantial use of character evidence was inapplicable in the *Goodwin* situation. As noted by the *Goodwin* court,

> [t]he "identity" exception has a . . . [very] limited scope; it is used either in conjunction with some other basis for admissibility or synonymously with *modus operandi.* A prior or subsequent crime or other incident is not admissible for this purpose merely be-

cause it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused.

492 F.2d at 1154. Goodwin's conduct at the time of his arrest was not so bizarre, unusual, peculiar, or unique that the similarities between his conduct at the time of his arrest could properly be used to link him to the crime charged in the indictment under the "identity" exception.

arrest or during his trial was the fruit of illegal wiretap activity. The only fact which even remotely pointed in the direction of such activity was that Oakum had taped some of his telephonic communications with Bloom. As the Government notes in its brief, however, such interception by a party to the communication is permissible under 18 U.S.C. § 2511(2). Accordingly, the District Court did not err in denying Bloom an evidentiary hearing on the highly speculative wiretap issue.

### IV. Speedy Trial

■ Finally, appellant maintains that his indictment should have been dismissed due to delays which allegedly exceeded the maximum time limits set for disposition of criminal cases under the Rule 50(b) Plan for the United States District Court for the Southern District of Texas for Achieving Prompt Disposition of Criminal Cases. Without detailing all the causes for delay in the present litigation, it suffices to note that the case was a complex one originally involving several defendants. The multiplicity of defendants and the problems of coordinating the schedules of their lawyers made it difficult to set trial dates. Substantial portions of the delay in bringing this case to trial are attributable to the defendant and to the congested criminal docket in the Southern District of Texas. In light of our recent decisions regarding Rule 50(b) Plans in the Southern District of Texas and elsewhere, *see, e. g., United States v. Atkins,* 5 Cir., 1976, 528 F.2d 1352, 1358; *United States v. Pena,* 5 Cir., 1976, 527 F.2d 1356, 1363–64; *United States v. Maizumi,* 5 Cir., 1976, 526 F.2d 848, 851; *United States v. Clendening,* 5 Cir., 1976, 526 F.2d 842, we conclude that the District Court did not err in refusing to dismiss Bloom's indictment for alleged noncompliance with the Plan.

AFFIRMED.

TUTTLE and CLARK, Circuit Judges (concurring specially):

■ We are of the opinion that the trial court erred in its rulings on the eviden-

tiary categories described as (1), (2) and (4) in Part II of Judge Ainsworth's opinion, but that such errors were harmless beyond a reasonable doubt. In our opinion there was no substantial need for proof of intent to distribute or for proof of any other purpose permitted by the last sentence of Fed.R. Evid. 404(b) and thus the admission of such evidence over defendant's clear objection violated this court's prior decision in *United States v. San Martin,* 505 F.2d 918 (5th Cir. 1974). We are furthermore of the opinion that both the category (2), contemporaneous comment that allowed the jury to consider the other crimes testimony if it tended to show "a willingness of the defendant to deal in drugs generally," and the category (4), final instruction to consider such testimony "only if it caused [the jury] to believe that such a person [as the defendant] was more inclined to deal in heroin," violated the first sentence of Fed.R.Evid. 404(b), which provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."