UNITED STATES of America,
Plaintiff-Appellee,

v.

Gregory Ignatcio TUNSIL,
Defendant-Appellant.

No. 80–5792.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1982.

Hugh James Behan, Federal Public Defender, Miami, Fla., for defendant-appellant.

Daniel H. Forman, Asst. U. S. Atty., Miami, Fla., Robert D. Luskin, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Gregory Tunsil appeals from his conviction, after trial by jury, of conspiracy to distribute and to possess heroin with intent to distribute in violation of 21 U.S.C. § 846; distribution of heroin in violation of 21 U.S.C. § 841(a)(1); and possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Tunsil urges three grounds of error: (1) the trial court's ad-

mission into evidence of testimony recounting Tunsil's statements which indicate that he had sold heroin on a previous occasion; (2) the trial court's listening to coconspirator hearsay during a hearing to determine whether that hearsay was admissible into evidence at trial; and (3) the trial court's denial of Tunsil's motion for judgment of acquittal on the basis of insufficiency of the evidence. Tunsil was indicted together with John Willie Mason and Barley English. Mason pleaded guilty to the identical three counts with which Tunsil is charged prior to trial, and English was separately tried and convicted on all three counts.[1]

The government's case consisted principally of the testimony of two undercover agents for the Drug Enforcement Administration, Stephen Gibbs and Kenneth Krusko. The agents testified that on February 19, 1980 they met with Mason to arrange for the purchase of one pound of heroin. Mason stated at that time that the price for the heroin would be $32,000.00 but that the deal could not be completed until Mason contacted his "source." The agents returned the next day, and Mason produced a package containing one ounce of heroin. Mason then called a telephone number listed under the name of Barley English and directed that the remainder of the heroin be brought to the location. Shortly thereafter, Tunsil and English arrived at the location in separate vehicles. As Tunsil walked toward Mason and the agents, Mason pointed at Tunsil and stated that he was "the man." Agent Gibbs questioned Tunsil regarding the purity of the heroin, and he responded that the heroin was of good quality.

Tunsil demanded to see the purchase money. After Agent Krusko produced the money, Tunsil said that he would take their word that they had brought the full amount of $32,000.00. Agent Gibbs then explained that he wanted to test the remaining fifteen ounces of heroin before handing over the money. Tunsil then directed Mason to tell English that "it was okay" for Agent Gibbs to check the remaining heroin which was in English's truck.

While Agent Gibbs was testing the heroin, Agent Krusko continued to talk with Tunsil. Tunsil stated that he had delivered the one ounce package that the agent had tested earlier and complained that there was no reason to test the remainder of the heroin. Agent Krusko then asked Tunsil how much "weight" he could handle. Tunsil stated that he could provide anything the agents required, and added that he had completed a three-pound deal the day before.

Agent Gibbs then signaled from the truck that the fifteen-ounce package was satisfactory. When Agent Krusko told him to bring the package from the truck, Tunsil stated: "Nobody touches the stuff until I get the money." Agent Gibbs then signaled other officers in the area who arrested Tunsil, Mason and English.

I.

■ At trial, Tunsil's counsel objected to the admission into evidence of Agent Krusko's account of Tunsil's statement that he had completed a "three-pound deal" the day before the arrest. The trial judge overruled the objection after listening to extended argument by both attorneys.

■ As an appellate court, we may overturn the decision of the trial court to admit evidence of an extrinsic offense only if we find that the admission of such evidence constituted a clear abuse of discretion. *United States v. McMahon*, 592 F.2d 871, 873 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979). It is clear that the trial court did not abuse its discretion by admitting the challenged testimony.

This case is controlled by the decision of the former fifth circuit in *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). *See United States v. Mitchell*, 666 F.2d 1385, 1388 (5th Cir. 1981) (mem.).

1. English's conviction was affirmed by this court in *United States v. English*, 652 F.2d 1000

(11th Cir. 1982). *Beechum* sets forth a two-part test for the admission of extrinsic offense evidence. First, the evidence must be admissible for a purpose other than proving the defendant's bad character. In this case, Tunsil's statement to Agent Krusko during the course of the drug transaction was certainly admissible as part of the res gestae of the charged offense. *See, e.g., United States v. Kloock*, 652 F.2d 492, 495 (5th Cir. 1981); *United States v. Beechum*, 582 F.2d at 912 n.15; *United States v. Bloom*, 538 F.2d 704, 707–08 (5th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977); *United States v. Masters*, 622 F.2d 83 (4th Cir. 1980). Additionally, the evidence was relevant to show that Tunsil intended to conspire with Mason and English in the possession and distribution of heroin. *United States v. Renteria*, 625 F.2d 1279, 1282 (5th Cir. 1980); *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir. 1980).[2]

The second part of the *Beechum* test requires that the probative value of the extrinsic offense evidence not be substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403; *United States v. Beechum*, 582 F.2d at 914. In this case, the extrinsic offense evidence was particularly probative on the issue of Tunsil's intent because of the similarity of the charged and extrinsic offenses and their proximity in time. *United States v. Byers*, 600 F.2d 1130, 1133 (5th Cir. 1979); *United States v. Bloom*, 538 F.2d at 709. Balanced against this, there was little likelihood of the evidence causing unfair prejudice. The extrinsic offense "was not of a heinous nature, likely to incite the jury to an irrational decision," nor was the evidence cumulative or confusing to the jury. *United States v.*

*McMahon*, 592 F.2d at 876; *see also United States v. Mitchell*, 666 F.2d at 1389; *United States v. Salisbury*, 662 F.2d 738, 741 (11th Cir. 1981).[3]

In sum, the trial judge did not abuse his discretion by admitting the extrinsic offense evidence.

## II.

■ At trial, the government sought to introduce testimony by Agents Gibbs and Krusko recounting statements by Mason which incriminated Tunsil. In line with the decision of the former fifth circuit in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the trial court held a hearing to determine whether the government had sufficient independent evidence of a conspiracy between Mason and Tunsil to allow the statements into evidence under the coconspirator provision of Fed.R.Evid. 801(d)(2)(E). During that hearing the trial judge, over the objection of defense counsel, listened to testimony containing some of the statements by Mason that the government sought to present at trial. On appeal, Tunsil urges us to presume that because the trial judge heard the coconspirator statements, he necessarily relied upon them in making his determination that the statements were admissible. We decline to create such a presumption.

Trial judges have been admonished to rely solely on evidence independent of the alleged coconspirator's statements in making their preliminary determinations of whether those statements are admissible at trial. *United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir.), *cert. denied*, 449 U.S.

2. Such evidence is, of course, only relevant if the jury could reasonably find that the defendant actually committed the extrinsic offense. *United States v. Mitchell*, 666 F.2d 1385, 1389 n.6 (11th Cir. 1982); *United States v. Beechum*, 582 F.2d 898, 912–13 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Here, Tunsil's admission that he had completed a "three-pound deal" would certainly justify a finding by the jury that he did complete that deal.

3. Whatever prejudice did attend the admission of the extrinsic offense evidence was enhanced somewhat by the absence of cautionary instructions to the jury. *See United States v. Guerrero*, 650 F.2d 728, 737 (5th Cir. 1981). Because the defense counsel did not request such instructions, we judge the omission of the trial court to administer such instructions sua sponte by the plain error standard. *United States v. Barnes*, 586 F.2d 1052, 1058 (5th Cir. 1979). We conclude plain error was not committed because the rights of the defendant were not substantially prejudiced. *Id.*

956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980); *United States v. James*, 590 F.2d at 581. Although the trial judge in this case listened to the alleged coconspirator's statements during the hearing, we presume that the trial court relied only upon the independent evidence presented by the government in making its determination. *See* C. McCormick, *Evidence* § 60 (2d ed. 1972). *Cf. United States v. Hawkins*, 661 F.2d 436, 450 (5th Cir. 1981) (so long as the trial court is "in a position to review the Government's independent evidence supporting the admissibility of coconspirator statements," appellate court will find compliance with *James* procedure). Because that independent evidence of a conspiracy between Tunsil and Mason was substantial, we conclude that the trial court committed no reversible error.

### III.

■ At the close of the government's case, Tunsil's counsel moved for judgment of acquittal on grounds of insufficiency of the evidence. The trial court committed no error in denying that motion.

The standard of review as to sufficiency of evidence is whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir. 1981); *United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980). In conducting that review, we view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The first count with which Tunsil was charged is conspiracy to distribute heroin. Tunsil does not dispute that a conspiracy existed in this case. Relying upon *United States v. Avila-Dominguez*, 610 F.2d 1266, 1271 (5th Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980), however, he contends that the government has not proved that he was a knowing and willing participant in the conspiracy. The record amply demonstrates that Tunsil was actively involved in the transactions leading up to the transfer of heroin to the agents.

This is sufficient evidence to prove that he knowingly and willingly participated in a conspiracy with Mason and English to distribute heroin. *United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir. 1981).

The second and third counts charged Tunsil with distribution and possession with intent to distribute heroin. Tunsil claims that the government failed to prove that he was ever in possession of the heroin distributed to the agents.

Although it may be disputed whether Tunsil was ever in actual possession of the heroin, there is no question that he was in constructive possession of it. In *United States v. Moreno*, 649 F.2d 309, 313 (5th Cir. 1981), the court held that constructive possession may be shown by evidence of the defendant's control over a narcotics operation. In this case, Tunsil evinced such control by directing the actions of Mason and English at the scene of the transaction.

AFFIRMED.