UNITED STATES of America, Plaintiff,

v.

Luis ARANA, et al., Defendants.

No. 95–80272.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 4, 1998.

Wayne F. Pratt, Detroit, MI, Michael Stern, Washington, DC, for U.S.

Richard P. Zipser, Bloomfield Hills, MI, for Arana.

Maria Mannarino, Detroit, MI, for Hernandez.

Martha Ellen Dennis, Saline, MI, for Dominguez.

Donald W. Ferris, Ann Arbor, MI, for Reyes.

## OPINION AND ORDER DENYING DEFENDANT DOMINGUEZ'S MOTION FOR MISTRIAL

ROSEN, District Judge.

### I. INTRODUCTION

Defendant Lorenzo Dominguez has moved the Court for a mistrial based upon the July 28, 1998 testimony of co-defendant and cooperating Government witness, Jose Balsce. Defendants Arana, Hernandez and Reyes have joined in Dominguez's Motion. At issue is Jose Balsce's testimony regarding Dominguez's and Arana's conversation when he brought the two Defendants together in Miami "in 1991 or 1992." Balsce's testimony concerning this conversation is as follows:

> Q: [by the Government]: Did Lorenzo Dominguez and Luis Arana meet in Miami?
>
> A: [by Balsce]: Yes, I brought them together at a disco in Miami in 1991 or 1992.
>
> Q: What was said?
>
> A: Arana asked Dominguez what he had been doing. Dominguez said he had been doing small businesses.
>
> Q: What kind of small businesses?
>
> A: Drug businesses. Dominguez had been dealing drugs in a small way; so Arana said if he wanted to make more money he should come see Arana. Arana said Dominguez should work for Arana in his drug business.

Defendant Dominguez contends that this testimony concerning Dominguez's dealing of drugs prior to the time of the conspiracy charged in the indictment constitutes evidence of other crimes, wrongs or acts subject to Fed.R.Evid. 404(b), and since the Government did not provide defense counsel with notice of this evidence prior to trial as required under the Rule, the presentation of this evidence to the jury is grounds for a mistrial.

The Government argues that Balsce's testimony about the conversation between Dominguez and Arana concerning Dominguez's prior drug dealing is evidence of Arana's attempt to recruit Dominguez to join his conspiracy and, therefore, the subject testimony is *res gestae* evidence that is part of the background or "setting" of the charged conspiracy crime and, as such, is "intrinsic," as opposed to "extrinsic," evidence of the crime, and not subject to the strictures of Rule 404(b).

## II. *DISCUSSION*

The issue presented here is whether evidence of a defendant's statements made during a conversation with a codefendant/co-conspirator at the inception of their relationship but prior to the charged conspiracy, concerning his own prior drug trafficking activities is "intrinsic" to the charged conspiracy, or "extrinsic" to it and, therefore, subject to Rule 404(b) and its notice requirements.

Fed.R.Evid. 404(b) provides:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

 Those courts which have addressed the issue have held that Rule 404(b) applies only to limit the admission of other acts "extrinsic to" the crime or crimes charged. *See United States v. Chin,* 83 F.3d 83, 87 (4th Cir.1996) and cases cited therein. It is well settled that Rule 404(b) does not extend to evidence of acts which are "intrinsic" to the charged offense. *See United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995), quoting 1991 Advisory Committee Note to Rule 404(b). "Other act evidence is *intrinsic* when the evidence of the other act and the evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert,* 995 F.2d 1006, 1007 (10th Cir.1993), *cert. denied,* 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993). *See also, United States v. Barnes, supra* ("intrinsic evidence" is evidence "which is inextricably intertwined as 'an inte-gral part of the immediate context of the crime charged.' ").

 The Government argues that when a defendant discusses uncharged crimes in the course of committing the charged offense, the evidence of the uncharged crimes is *res gestae* or "intrinsic" evidence, and as such is not subject to Rule 404(b). In support of this contention, the Government cites *United States v. Barnes,* 49 F.3d 1144 (6th Cir.1995). In *Barnes,* the defendants, James Barnes and Doyle Pate, were convicted of possession with intent to distribute methamphetamine. Barnes and Pate were arrested after claiming a package from a United Parcel facility. The parcel contained methamphetamine.

At trial, the defendants challenged the government's proffer of testimony of Pate's prior cell mate regarding a conversation that he had with Pate in which the defendant related that on the day he was arrested, he was expecting the UPS package to make up for a shortage in an earlier drug shipment. The trial court ruled that the evidence was "intrinsically related" to the acts charged in the indictment and also that the evidence was admissible under Rule 404(b). 49 F.3d at 1146.

The Sixth Circuit held that the evidence of the previous shorted drug shipment was not within the scope of Rule 404(b), explaining:

When other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic". **"Intrinsic" acts, on the other hand, are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity.** When that circumstance applies, the government has no duty to disclose the other crimes or wrongs evidence.

\* \* \* \* \* \*

In this case, **there was a direct connection between the earlier "short" drug shipment and the receipt of the one for which the defendants were charged.** The trial court concluded that the evidence could stand for the proposition that the drugs which were the subject of the indict-

ment were "to make up for a prior shipment which was short." We agree that the challenged testimony was intrinsic to the conduct alleged in the indictment, and consequently, Rule 404(b) was not implicated. *Id.* at 1148–49 (emphasis added).

This passage from *Barnes* makes clear that the Government's reliance on that case is misplaced. The *Barnes* court found that the drug shipment which was the subject of the indictment was a "make up" shipment for the prior uncharged shorted drug delivery. The two shipments, thus, were clearly "part of a continuing pattern of illegal activity" which rendered the earlier shipment "inextricably intertwined" with the shipment which was the basis for the charged crime. Here, of course, there is no such direct connection between Dominguez's prior drug dealing and the charged Arana drug conspiracy crimes.

The Government urges the Court to focus not on the prior drug transactions themselves, but rather on the fact that Dominguez told Arana about them in the same conversation in which Arana allegedly recruited him to join his drug conspiracy. In support of this argument, the Government relies upon *United States v. Lambert, supra.* In that case, two co-conspirator bank robbers, in deciding to rob First Security Bank in Sandy, Utah, initially discussed the possibility of robbing the supermarket next door to the Bank which had a branch of a different bank in it. This discussion about the possibility of robbing the supermarket branch occurred less than a week before the robbery of First Security Bank which was the basis of the indictment. The defendants' discussions about possible robbery targets continued over the next several days, but each time the focus ended up upon First Security Bank.

The court held that the discussion of the possibility of robbing the supermarket, which occurred less than a week before they robbed the First Security Bank, was "intrinsic to the crime charged" as it constituted "preliminary planning" for the charged offense and was, therefore, admissible without regard to Rule 404(b). The court explained:

> When contemplating a robbery, inspection and selection of possible targets and discussion of the feasibility of robbing each is

standard operating procedure. That the discussion complained of did not focus on First Security is not dispositive; defendant and [his co-defendant] were engaged in deciding how and when to undertake a robbery, and immediately thereafter they focused on First Security, the robbery for which defendant was convicted. The substance of the conversation was thus intrinsic to the crime charged, and its admission was not an abuse of discretion.

995 F.2d at 1008.

Although the issue is close and the line perhaps finely drawn, the Court believes that the foregoing discussion—with its emphasis on the close interrelationship between the planning of the specific crime charged and the actual commission of that crime—makes it clear that the "preliminary planning" discussion in *Lambert* is readily distinguishable from the instant matter.

The Government further relies upon *United States v. Bloom,* 538 F.2d 704 (5th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977) and *United States v. Tunsil,* 672 F.2d 879 (11th Cir.1982), *cert. denied,* 459 U.S. 850, 103 S.Ct. 110, 74 L.Ed.2d 98 (1982). In *Bloom,* the defendant, who was charged and convicted of possession with intent to deliver heroin, told undercover narcotics officers immediately after the first charged heroin transaction about his prior heroin, marijuana and cocaine dealings. The court found that

> the evidence admitted formed an integral and natural part of the agents' accounts of the circumstances surrounding the offenses for which Bloom was indicted.... The evidence in question served merely to complete the agents' accounts of their dealings with Bloom, and was not introduced primarily to establish propensity to commit the crimes charged. Arguably, this is not the kind of evidence to which the general rule excluding evidence of other offenses applies.

538 F.2d at 707.

Importantly, however, the *Bloom* court did **not** affirmatively rule that the evidence was *res gestae* "intrinsic" evidence. Rather, it found the evidence admissible under Rule

404(b) (which at the time, did not have a "prior notice" requirement in it). *Id.* at 708.

Similarly, in *Tunsil,* in the course of conducting a heroin sale for which he was arrested and charged and *in response to the undercover agent's inquiry as to how much "weight" he could handle,* the defendant stated that he could provide anything the agents required, and pointed out that he had just done a three-pound heroin deal the day before. 672 F.2d at 880. The trial court admitted the evidence of the defendant's statement about his drug deal the day before as part of the *res gestae* of the charged offense and the appellate court found no abuse of discretion in the trial court's ruling. Thus, the prior acts referred to were clearly intrinsic to the charged crime because the defendant made the statement as part-and-parcel of the negotiations over the charged transaction, and the reference to the prior sale was made for the purpose of reassuring the agent/purchaser that he could provide any quantities requested.

In *United States v. Chin,* 83 F.3d 83 (4th Cir.1996), another case relied upon by the Government, the defendant was charged with a continuing criminal enterprise involving a variety of drug and firearm-related offenses. At trial, an undercover narcotics agent testified that during one of the charged drug transactions, Chin told him that he also engaged in murder-for-hire and claimed that "his people" were responsible for a particular murder. The Eighth Circuit found that Rule 404(b)'s exclusion of bad acts evidence did not pertain to the agent's testimony:

> Other criminal acts are intrinsic when they are "inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged".... The testimony about contract murder fits into the intrinsic category of evidence. The statements were made during an exchange of heroin for cash. Thus it was an intrinsic part of the drug deal and the witness's account of the context and circumstances surrounding the deal....

> Furthermore, **the testimony was not admitted solely to demonstrate Chin's bad character. Killing people was an integral part of Chin's criminal enterprise, including his heroin business, and the threat of killing viewed as necessary to ensure deals were completed without problems arising....**

> \*　\*　\*　\*　\*　\*

> ...[T]he murder demonstrated the extent to which Chin was willing to go, or at least, threaten, in order to ensure that the heroin deal and any future deals went smoothly. **The murder business was part-and-parcel of his criminal enterprise....**

83 F.3d at 88 (emphasis added).

Here, the Government contends that the *conversation* between Arana and Dominguez fits within the factual and legal parameters of the foregoing cases because the challenged evidence [Dominguez's statement about his prior small-time drug deals] does not 'solely' concern uncharged crimes but, rather, also concerns an aspect of the charged crime, his recruitment into the conspiracy. Therefore, according to the Government, it is not "other crimes" evidence.

The conversation in this case certainly presents a very close question as to whether the prior acts related by the witness concerning Defendant's earlier unrelated drug dealings are intrinsic or extrinsic to the charged conspiracy. On the one hand, Dominguez's alleged statements do provide some context for his ultimate decision to join Arana in his larger drug enterprise. On the other hand, the acts were not only prior to the conspiracy charged in the instant indictment, they were completely separate and distinct from those acts charged in the indictment. On balance, it strikes the Court that what the Government is essentially doing in arguing that the prior acts are intrinsic to the charged crime is "bootstrapping" the evidence of Dominguez's pre-conspiracy small-time drug dealings onto Arana's "come work with me and make a lot of money" recruitment pitch. Simply because Dominguez's statement and Arana's invitation to join the conspiracy occurred in the same conversation does not mean that Dominguez's prior drug deals themselves are not "other crimes" evidence subject to Rule 404(b). That these earlier

acts provide some context for Dominguez's later involvement in the conspiracy does not put them outside the purview of Rule 404(b). The prior acts here, as contrasted with those in *Barnes, Lambert, Bloom, Tunsil,* and *Chin,* were not in the words of the Advisory Committee Note, "inextricably intertwined [with the charged acts], or... part of a single criminal episode, or ... *necessary* preliminaries to the charged crime."

Indeed, in this case, there is no evidence of any temporal nexus or continuing relationship between Dominguez's pre-conspiracy, small-time drug deals and the conspiracy he is alleged to have joined with Arana, et al., other than the fact that he told Arana about the prior acts in the same conversation in which Arana recruited him to join the conspiracy. Nor are they in any other way related to the charged conspiracy.

In fact, if anything, the purpose for which the Government argues it is introducing these prior acts seems to be for a classic Rule 404(b) use: i.e., to show Dominguez's motive in joining the Arana conspiracy. Certainly it shows context, but it does so as a separate, distinct activity, not as part-and-parcel of the charged crime. In considering this question, the Court must be cognizant of the language of Rule 404(b) itself, which specifically prohibits evidence of other crimes which may raise a character inference of propensity to act "in conformity therewith." It is only when the other acts prove something other than propensity that they may be admitted, and then only for that specific purpose. Here, as noted, the prior acts do show something other than propensity—they show Dominguez's motive to join the conspiracy, i.e., to make more money. But, in this Court's view, rather than taking the evidence outside the purview of Rule 404(b), this use brings the evidence precisely within the Rule.

■ For the foregoing reasons, the Court finds that although the issue is close, the evidence concerning Dominguez's alleged past drug dealing is extrinsic to the crime

charged in the indictment, and would be subject to, and admissible under, Rule 404(b). Because the evidence is subject to Rule 404(b), it would also be subject to the notice requirements of that Rule. It is undisputed that the Defendants made an explicit, formal request for Rule 404(b) evidence, but the Government did not provide Defendants with either pre-trial or pre-witness notice that it would present this evidence of Dominguez's prior drug dealings. Thus, failure to provide this notice, either before or during trial, requires that the evidence be excluded.

However, because the question of intrinsic versus extrinsic evidence presented here is a close one, the Court finds no bad faith on the part of the Government in failing to provide Rule 404(b) notice of this evidence. In addition, as the Court has indicated, the evidence in question is not itself inadmissible; rather, it would be admissible for a proper purpose under Rule 404(b), i.e., to show Dominguez's motive in joining the conspiracy. As such, its admission per se is not excludable under Rule 403, as Defendants have argued, since it cannot be said that its probative value is substantially outweighed by a danger of unfair prejudice. Thus, the prejudice occasioned here by presentation of this evidence is not that it was placed before the jury, but rather that Defendants were not first given the notice required under the Rule. Given this, and given the fact that the Court has found that, in view of the closeness of the question, the Government did not act in bad faith in failing to give prior notice, the Court must deny the Defendants' motion for mistrial, as mistrial is not the appropriate remedy here. Mistrial should only be granted where the proffered evidence is not only inadmissible, but also so prejudicial to the trial rights of a party that no other remedy can redress the prejudice. That is simply not the case here.

Rather, because no notice was given and no foundation established that the prior acts in fact occurred,[1] the appropriate remedy

1. Under Rule 404(b), where the prior act evidence is contested by the defendant, the Government must be prepared to lay a foundation by offering sufficient evidence such that under Fed.

R.Evid. 104(b), the jury could find by a preponderance of the evidence that the prior acts in question actually occurred. *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 99

here is for the Court to order Jose Balsce's testimony regarding Dominguez's statement about his prior drug dealings stricken from the record and instruct the jury to disregard that testimony.

### III. *CONCLUSION*

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant Dominguez's Motion for Mistrial be, and hereby is, DENIED.

L.Ed.2d 771 (1988). Here the Government's failure to provide foundation evidence is due to its mistaken belief that the evidence in question was not subject to Rule 404(b) but was intrinsic to the crime charged. Therefore, this failure is excused for the same reasons that the Court excused notice.