**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis SAN MARTIN, Defendant-
Appellant.**

**No. 74–1684.**

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1974.

Abel H. Rigau, Tampa, Fla., Donald G. Doddington, Tampa, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., D. Frank Winkles, Asst. U. S. Atty., Jacksonville, Fla., Claude Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal raises the question, once again, of the propriety of using prior criminal convictions as evidence in a prosecution for subsequent acts.

Louis San Martin appeals his conviction by a jury on one count of assaulting an agent of the Federal Bureau of Investigation while in the performance of his duties, in violation of 18 U.S.C. § 111.[1] San Martin was sentenced to the maximum prison term of three years. He challenges his conviction on three grounds: (1) that the trial court improperly admitted evidence of his three prior state court, misdemeanor convictions for assault—two of which involved resisting police officers; (2) that the trial court improperly admitted rebuttal evidence, which was irrelevant and prejudicial; and (3) that the trial court erred in several respects in charging the jury.

We agree that the evidence of the appellant's prior convictions and certain rebuttal testimony were improperly admitted and therefore reverse. We, therefore, do not reach the other grounds.

## I.

On October 18, 1973, a complaint was issued charging the appellant with obstructing a criminal investigation, in violation of 18 U.S.C. § 1510. A warrant was issued for the appellant's arrest, and lodged with the United States Mar-

shal's Office in Tampa. Six agents of the Tampa Office of the Federal Bureau of Investigation then went to the residence of the appellant's father to make the arrest. After observing the entrance to the elder San Martin's apartment for approximately two hours, one of the agents recognized the appellant as he prepared to enter the apartment and informed him that a warrant had been issued for his arrest.

The appellant went into the apartment briefly to get a pair of shoes, and after returning began to accompany Agent Richard Gross to one of the awaiting bureau automobiles. After only a few steps, the appellant stopped and said: "Let me see your warrant. I am not going any place until I see a warrant." Agent Gross replied that the warrant had been left in the Marshal's Office, according to standard procedure, and that a copy would be furnished later. The appellant repeated that he would not go anywhere until he saw the warrant, and started to walk away. Agent Gross then grasped the appellant's arm, in what he described later as a "come-a-long hold."[2] As the agent did so, he was grabbed around the neck from behind by the appellant's brother, Richard San Martin. At that point, Agents Charles Long and Esteban Uriarte rushed to his aid. The appellant broke free from Agent Gross, and as he did, he turned and struck Agent Long on the shoulder with his arm or elbow. The blow was forceful enough, according to Agent Long's testimony, to make the shoulder sore for two or three days.

Six days after the incident, a Federal Grand Jury sitting in Tampa indicted the appellant, his father and his brother each for one count of wilfull and forcible assault in violation of § 111.

1. Section 111 of 18 U.S.C. provides, in pertinent part:
   "Whoever forcibly assaults, resists, opposes, impedes, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

Section 1114 of 18 U.S.C. includes "any officer or employee of the Federal Bureau of Investigation of the Department of Justice."

2. At trial, Agent Gross described the hold, which he said was a standard technique for handling uncooperative arrestees: one hand on the arrestee's nearest wrist and the other hand above the elbow of the same arm.

The sole material issue of fact at trial was whether the appellant intended to strike Agent Long, or whether he did so accidently as he wheeled from Agent Gross' grasp. It is clear from the record that Agent Long was behind the appellant when the scuffle began and that the appellant did not see Long until he turned.

During trial, the following colloquy occurred between appellant's counsel and Agent Long:

Q: So he [the appellant] wouldn't have had any knowledge that you were standing behind him, necessarily?

A: Necessarily.

Q: So, it could be possible that when striking you, sir, it was pulling away from Officer Gross. Is that correct?

A: That's correct, (indicating affirmatively.)

Q: And in fact, not striking out at you.

A: Resisting arrest.

In an effort to show that the blow was intentional, the prosecution presented evidence early in the trial that the appellant had three previous misdemeanor convictions in Florida state courts: in 1963 for resisting or opposing a public officer, in 1964 for interfering or opposing a public officer, and in 1969 for assault and battery on a uniformed member of the United States Air Force. Counsel for the appellant strongly objected to the admission of this evidence and argued that it was irrelevant, particularly because it was remote, under our holding in United States v. Broadway, 477 F.2d 991 (5th Cir. 1973). The trial court allowed the evidence to be submitted, but it refused to allow details on the incidents leading to the convictions to be introduced.

The appellant, his brother and his father were all convicted under § 111 for their parts in the brief encounter. Neither appellant's brother nor his father appeals his conviction.

II.

■ It is a cardinal principle of the common law that the prosecution may not use evidence of prior criminal acts in its case-in-chief to prove that the defendant committed the crime with which he is presently charged. *See*, Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). "The general rule is that evidence of another crime unconnected with the one on trial is inadmissible, but this rule is subject to a number of exceptions, the first of which is that evidence of other offenses by the accused is admissible to show his criminal intent as to the offense charged, where the other offenses are similar to and not too remote from that charged, and where intent is in issue as an element of the offense charged." Weiss v. United States, 122 F.2d 675, 682 (5th Cir. 1941), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941).

We have repeatedly noted that the general rule is "just and wise" in order to avoid the enormous danger of prejudice to the defendant that the evidence of prior crimes creates, and we have recently cautioned that "exceptions to that principle, each of which has been carved out to serve a limited prosecutorial and judicial purpose, should not be permitted to swallow the rule." United States v. Miller, 500 F.2d 751, 762 (5th Cir. 1974). *See also, e. g.*, United States v. Goodwin, 492 F.2d 1141, 1150 (5th Cir. 1974); United States v. Lawrence, 5 Cir., 480 F.2d 688, 691–692, n. 6; United States v. Broadway, 477 F.2d 991, 994–995 (5th Cir. 1973); United States v. Johnson, 453 F.2d 1195, 1199 (5th Cir. 1972); United States v. Boyd, 446 F.2d 1267, 1270–1271 (5th Cir. 1971).

■■ Before one of the exceptions to the general rule may properly be invoked in order to introduce evidence of prior crimes, the trial court must be satisfied that several threshold prerequisites have been met:

1. Proof of the prior *similar* offenses must be "plain, clear and convincing;"

2. The offenses must not be too remote in time to the alleged crime;

3. The element of the prior crime for which there is a recognized exception to the general rule, such as intent, must be a material issue in the instant case;

4. There must be a substantial need for the probative value of the evidence provided for by the prior crimes. United States v. Cavallino, 498 F.2d 1200, 1206 (5th Cir. 1974). If all of these prerequisites are satisfied, and if it appears on balance that the need for such evidence outweighs the prejudicial effect it is likely to have, then the evidence is admissible. United States v. Goodwin, *supra,* 492 F.2d at 1150; United States v. Miller, *supra,* 500 F.2d at 762.

Applying this test to the case before us, the evidence of the appellant's prior convictions fails to meet the first two prerequisites and therefore should not have been admitted.

The evidence of the appellant's three prior convictions was introduced by the prosecution to prove that the appellant intended to strike Agent Long. But the evidence cannot be said to be "plain, clear and convincing," because only the fact of the offenses and not their circumstances was introduced. It is not clear, for example, from the record that any of these offenses included specific intent as a material element; prior crimes requiring only general intent are of meager, if any, probative value concerning the later existence of specific intent.[3]

Moreover, the appellant's two misdemeanor convictions for opposing or interfering with a police officer were clearly too remote in time to be probative in the instant prosecution. The offenses occurred ten and nine years earlier, when the appellant was 17 and 18 years old, respectively. The rule against remoteness is usually stated generally, without detailed explanation. *See, e. g.,* United States v. Broadway, *supra,* 477 F.2d at 994; United States v. Restrepo, *per curiam,* 417 F.2d 927, 928 (5th Cir. 1969); Matthews v. United States, 407 F.2d 1371, 1381 (5th Cir. 1969). However, there are established guidelines. As this Court said in Lloyd v. United States, 226 F.2d 9, 18 (5th Cir. 1955):

"Evidence of other wrongful acts to prove intent must go further than showing that the defendant has a generally criminal disposition or character, and must logically tend to prove the defendant's criminal intent *at the time of the commission of the act charged.* The prior acts must be similar to the one charged and must not be so remote as to be lacking in evidentiary value . . . In the present case, more than eight years had passed and there was no logical probative value as to the appellant's intent in the commission of the later act . . . ." [Emphasis added.]

██ The test for remoteness need not, and indeed cannot, be a simple rule of thumb based solely on the number of years that have elapsed between the prior crime and the present offense charged.[4] The better test, as outlined in *Lloyd,* is whether the prior crime is similar in nature and in its material elements to have clearly probative value

---

3. Our holding in no way conflicts with our statement in Broadway that the "mental elements" of prior crimes need not be "clearly shown by competent evidence," 477 F.2d at 995, but "may be inferred by the trier of fact, from the totality of the circumstances." *Id.* at 995, n. 5. As noted, no evidence appears in the record concerning the circumstances of the prior crimes.

4. A gap of five years might not seem sufficiently "near to . . . the charged offense," United States v. Broadway, *supra,* 477 F.2d at 994, but it was upheld in a for-

gery case where "the prior offense and the one charged involved identical circumstances, even the same payee." Miller v. United States, 397 F.2d 272, 274 (5th Cir. 1968). *See, also,* Lindsey v. United States, 227 F.2d 113, 117 (5th Cir. 1955). It should be noted that cases where fraudulent intent is a material element of the offense charged, such as forgery, are classic exceptions to the general rule against admitting evidence of prior crimes. *See* Michelson v. United States, *supra,* 335 U.S. at 475–476, 69 S.Ct. 213, note 8.

with respect to the intent of the accused *at the time of the offense charged*. Under this test, prior crimes involving deliberate and carefully premeditated intent—such as fraud and forgery—are far more likely to have probative value with respect to later acts than prior crimes involving a quickly and spontaneously formed intent—such as assault in the case before us.

■ In summary, two factors in this case regarding the admissibility of prior-crimes evidence cannot be overemphasized. First, convictions during the defendant's younger years cannot logically be probative of intent in acts committed a decade later. Second, the evidence of prior crimes involving intent of the moment are hardly ever probative of later acts involving similarly split-second intent. Indeed, such prior crimes have less to do with the type of specific intent that may arise later, as in fraud, than they do with the defendant's overall disposition or character; and if there is one clear category that is *not* an exception to the general rule against allowing evidence of prior acts, it is that which includes "character, disposition, and reputation." Michelson v. United States, *supra*, 335 U.S. at 475, 69 S.Ct. 213. *See, also*, Railton v. United States, 127 F.2d 691, 692 (5th Cir. 1942); Hurst v. United States, 337 F.2d 678, 680 (5th Cir. 1964).

■■ It is essential that the general rule announced so long ago in *Weiss* and recently reaffirmed in *Broadway* and other cases be carefully observed. Although prior offenses may be valuable, and sometimes essential, to prove intent or design, the danger of their prejudicial effect is so great that all of the prerequisites must be met and the balancing test completely satisfied before they may be admitted safely into evidence. There is no talismanic effect to the words "intent" or "design," and prior offenses must be carefully analyzed beyond the mere assertion of these codewords before the offenses are admitted into evidence lest the trial of fact devolve into a battle of innuendo.[5]

■ In the case before us, the 1969 offense was insufficiently related in terms of material facts and the other two offenses were too remote in time to have any legitimate probative value with respect to the appellant's intent at the time of the alleged § 111 "offense."

■ Further, prejudicial error occurred when the trial court permitted the testimony of Louis San Martin's mother-in-law, Mrs. Hollis, dealing with matters that were totally irrelevant to any issue being tried. This evidence clearly implied that San Martin was involved in secreting or making unavailable for a Grand Jury appearance his wife, Debra, and her daughter, Bridget. The evidence purported to rebut testimony given by San Martin and his cousin, Jimmy Riddell, that they had not been in communication with Mrs. Hollis' daughter and grandchild since they turned up "missing."

In this case, in which the basic facts are not in dispute, but which the jury would have to decide based solely on whether or not San Martin *intended* to strike the agent, it was essential that implications, innuendoes, or charges of such a serious offense as that of obstructing justice, especially with the talk of "missing" witnesses, be kept from the jury. Since the questioning of Riddell and San Martin in cross-examination as to whether they had been in touch with Debra and Bridget was totally irrelevant, Mrs. Hollis' damaging contradicto-

---

5. *Cf.* United States v. Goodwin, *supra*, 492 F. 2d at 1155: "This Court has never hesitated to approve the admission of other-crimes evidence when that evidence has been relevant under one of the exceptions to the general rule. We have recognized, however, and we must continue to recognize, that the various categories of exceptions—intent, design or plan, identity, etc.—are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names. To the contrary, each exception has been carefully carved out of the general rule to serve a limited judicial and prosecutorial purpose."

924

ry testimony could not be excused as rebuttal, because it did not rebut any evidence that had any materiality or relevance to the issue being tried.

The judgment is reversed and the case is remanded to the trial court for further proceedings.