**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 99-40505

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JAMES ANDREW POLLANI,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Eastern District of Texas**
**Civil Docket #4:96-CR-65-1**

May 24, 2000

Before JONES, DUHÈ, and WIENER, Circuit Judges.

By EDITH H. JONES, Circuit Judge:[*]

James Andrew Pollani ("Pollani") appeals from his second conviction, after a retrial, for conspiracy to transport and transportation of stolen IBM computer parts in interstate commerce and money laundering. He received *inter alia* a 90-month term of imprisonment. He raises evidentiary issues, suppression issues and sentencing issues. Finding no reversible error, we affirm.

In September 1995, Carrollton Police Detective Jose Flores ("Flores") received a call from IBM security that IBM parts had been stolen from the Burnham Warehouse ("Burnham") in Denton County, Texas, during the summer of 1995. Burnham was a contract storage agent for IBM, receiving new and used computers on its behalf. IBM contacted the detective again in March 1996 after determining that one of the stolen parts had been sold by Lan Tech,

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

a sole proprietorship owned by Appellant Pollani in Lewisville, Texas. IBM provided Flores with a list of serial numbers from the stolen parts and with a videotape of Pollani allegedly offering to sell a Georgia computer parts dealer some of the stolen parts.

Based on this evidence, Flores obtained a search warrant for Pollani's residence and served the warrant in April 1996. Although Pollani signed a consent to search, he later claimed that his consent was involuntary given his fear that his wife and three year old son would be arrested. The police seized a computer and records relating to Pollani's computer business. No stolen computer parts were recovered but purchase orders listing Ronald Epps ("Epps") as the vendor were found. In May 1996, during the course of the investigation, two of Pollani's vehicles were seized after it was determined that they had been purchased with illegal proceeds.

In June 1994 - January 1995, before opening Lan Tech, Pollani had worked as a demo program technician for Sykes Enterprises ("Sykes"), which rented space at the Burnham Warehouse. At trial, Pollani testified that he did not have access to other parts of the warehouse and that he did not even know that IBM stored component parts at the facility. Other Burnham employees testified that Pollani walked around the warehouse freely. Although Pollani claimed that he left Sykes for a higher paying job, Pollani did not go to work for another company. Instead, he opened Lan Tech.

Epps, an IBM employee, became Pollani's principal source for computer parts from the Burnham Warehouse. Epps testified about his dealings with Pollani's co-defendants, all of whom worked at the Burnham facility. Epps paid certain co-defendants, Derrick Massey ("Massey"), George Stephens ("Stephens"), and Wendell McKay ("McKay"), to deliver stolen parts to an auto body shop in Irving, Texas twice and to a different warehouse. Epps and Pollani also met some of these men outside of Dallas and Plano on different occasions to remove parts from computers the men were transporting on trucks.[1] The co-defendants provided similar testimony about their roles in the delivery of stolen computer parts: they either delivered stolen computer parts to a given location or permitted Epps and Pollani to remove component parts from computers being transported on trucks that the co-defendants were driving. The men were paid in cash for their role in the scheme and understood that the parts were stolen. Each co-defendant pled guilty to various offenses and testified against Pollani at his trial. Although most of the co-defendants identified Pollani in court, at least one, Stephens, could not. Abundant evidence connected Pollani to the thefts, illegal transportation of stolen property, and money laundering to purchase vehicles.

Pollani's first conviction was reversed by this court. *See* United States v. Pollani, 146 F.3d 269 (5th Cir. 1998). In October 1998, a superseding indictment was returned against Pollani

---

[1] Pollani testified at trial that he had never met McKay or Stephens and that he had never removed parts from the back of a truck driven by either man.

and five other defendants (none of whom had been named in the first indictment), charging each of them with one count of conspiracy to transport stolen property in interstate commerce in violation of 18 U.S.C. § 371.[2]  Pollani was also charged with 12 counts of transportation of stolen property under 18 U.S.C. § 2314, and one count of money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii).  In January 1999, Pollani proceeded to trial, this time represented by appointed counsel, and he was convicted.

## EVIDENCE ISSUES[3]

### 1.   Unadopted Statements From FBI 302 Reports

Pollani contends that he should have been allowed to use allegedly inconsistent statements reported in FBI 302 reports to Agent McCormick to impeach the testimony of witnesses Epps, McKay, and Massey.  During cross-examination of Agent McCormick, defense counsel attempted to impeach Epps through the prior inconsistent statements.  The district court excluded the evidence since McCormick was not a member of the conspiracy and it was not shown that Epps had adopted any of McCormick's notes as his own.  Although Pollani had the opportunity to cross-examine Epps, McKay, and Massey about their statements to Agent McCormick, Pollani chose not to.

---

[2]    Pollani's five co-defendants pled guilty to conspiracy pursuant to plea agreements and testified against Pollani at trial.

[3]    This court reviews a district court's evidentiary rulings for an abuse of discretion. United States v. Haese, 162 F.3d 359, 364 (5th Cir. 1998). Evidentiary rulings must be affirmed unless they affect a substantial right of the complaining party.  Id. (citing United States v. Skipper, 74 F.3d 608, 612 (5th Cir. 1996)).

4

According to Pollani's offers of proof at the end of trial, the trial testimony of Epps, McKay, and Massey conflicted with their original 302 statements. Their original statements would have implied that Pollani was not involved in many of the activities attributed to him at trial. For example, among other things, Epps stated that only he and the Pinsons were involved in the theft ring and that Pollani and Epps had no formal agreement. At trial, though, Epps admitted that he did not initially cooperate with investigators because he wanted to protect others involved in the conspiracy. On cross-examination, Epps admitted that he had not told the FBI about Pollani's role in removing parts from computers or about the roles of Pollani's co-conspirators in order to protect them.[4]

Under Fed. R. Evid. 613(b), extrinsic evidence of prior inconsistent statements of witnesses is admissible only if the witness is afforded an opportunity to explain or deny the statement, and the opposing party is afforded an opportunity to interrogate the witness thereon. Counsel must describe the impeaching statement to the witness or lay a foundation for its admissibility: "It is equally clear, however, that Rule 613(b) does not supplant the traditional method of confronting a witness with his inconsistent statement prior to its introduction into evidence as the preferred method of proceeding." Wammock v. Celotex Corp.,

---

[4] McKay's and Massey's 302's did not implicate Pollani in the theft conspiracy. At trial, McKay admitted that he did not tell the complete truth when he first met with the FBI. On cross-examination, defense counsel questioned both men about their initial statements, and both men stated that Pollani was involved in the theft scheme.

5

793 F.2d 1518, 1522 (11h Cir. 1986).[5]  Pollani chose not to confront Epps, McKay, or Massey with their allegedly inconsistent statements, and therefore, did not give them the opportunity to explain or deny those statements.  The district court's ruling was correct.

Furthermore, Pollani had ample opportunity to challenge the credibility of these witnesses during cross-examination.  Epps was cross-examined on what he had or had not said to the FBI in his first three interviews with agents.  McKay admitted that he did not tell the complete truth the first time, and Massey said he did not mention Pollani because no one asked about Pollani. Thus, defense counsel was able to delve into the witnesses' statements to the FBI even though the 302 reports were excluded.

## 2.   Pollani's Prior Conviction

Pollani next asserts that evidence of his December 1987 misdemeanor theft conviction was improperly admitted because it was too remote in time and was more probative of character (i.e., propensity to steal) than of his knowledge or intent to commit the charged crimes.

---

[5]  But see 28 Charles A. Wright & Victor J. Gold, Fed. Prac. & Proc. § 6205 (West 1993)(citing Alexander v. Conveyors & Dumpers, Inc., 731 F.2d 1221, 1231 (5th Cir. 1984)("In fact, the rule does not even require that the impeaching party during his examination provide the witness with the opportunity to explain or deny the statement.  Rather the rule is satisfied so long as that opportunity can be provided by the opposing party during its examination of the witness."). Pollani suggests that the government could have recalled Epps, et al., after McCormick was cross-examined about the 302 reports.  But even the case relied on by Pollani allows such prior inconsistent statements to get in by another witness only if "on cross-examination the witness has denied making the statement, or has failed to remember it...." United States v. Sisto, 534 F.2d 616, 622 (5th Cir. 1976) (internal quotation marks and citation omitted).

Evidence of other crimes is admissible to prove plan, motive, intent, preparation, knowledge, and identity. Fed. R. Evid. 404(b). Extraneous offenses may not be offered as proof of a defendant's character, and the probative value of the evidence must not be substantially outweighed by the threat of unfair prejudice, confusion, and delay. See United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1244 (1979). The age of the prior conviction is not a per se bar to admissibility under Rule 404. See United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir.), cert. denied, 519 U.S. 906, 117 S.Ct. 264 (1996)(a prior conviction more than ten years old was admissible).

Pollani relies on United States v. Martin, 505 F.2d 918 (5th Cir. 1974), in which this court found that two misdemeanor offenses for opposing a public officer, committed nine and ten years earlier, were too remote: "[C]onvictions during the defendant's younger years cannot logically be probative of intent in acts committed a decade later." Id. at 923. But those prior convictions required proof of general intent only. As a result, the court held that they were of little probative value concerning the later existence of specific intent. Id. at 922. The court noted that cases involving fraudulent intent as a material element of the offense charged are far more likely to have probative value with respect to later acts than those involving only general intent, such as assault. Id. at 923.

This is a specific intent case, as the government had to prove that Pollani knew the property was stolen. The district court held that Pollani's 1987 conviction spoke directly to his knowledge and intent, as he had then pled guilty to charges stemming from the theft of several VCRs and television sets from his then-employer. While admitting the prior conviction, however, the court warned the jury twice that it could be considered only for the limited purpose of determining whether Pollani had the intent, state of mind, or motive to commit the offense. The similarity between the prior and present offenses is clear. The district court's limiting instructions, given immediately after the offense was offered into evidence and again before the jury retired to deliberate, minimized any prejudice Pollani may have suffered. No abuse of discretion was shown.

### 3. Identification by a Witness Who Had Been Shown a Photograph of Pollani

Pollani contends that the district court erred in refusing to strike co-defendant Kyle's in-court identification of him. Pollani sought a mistrial, arguing that since Kyle was shown a single photograph instead of a photographic lineup, Kyle's identification was tainted and unreliable.

Whether identification evidence is admissible at trial is a mixed question of law and fact reviewed de novo, but the district court's underlying factual findings are reviewed for clear error. United States v. Fletcher, 121 F.3d 187, 194 (5th Cir. 1997). An in-court identification following a pre-trial identification by photograph will be set aside only if the identification procedure

was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Id. (citing Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968)).

Kyle positively identified Pollani in court as the man who had gone into the back of his truck on two occasions and removed parts from a computer. He said that Pollani looked the same as before although thinner (apparently, Pollani had lost quite a bit of weight). Kyle admitted that at the time of the theft he did not know Pollani's name, describing him only as a white guy. He said the FBI agent showed him only one picture "just to ask me if I knew, had I seen him before."

Agent McCormick testified, out of the presence of the jury, that he questioned Kyle after Pollani's first trial in order to obtain a confession from Kyle. At the end of the interview, Kyle mentioned that a white man had removed parts from his truck on two occasions. McCormick then showed Kyle a picture of Pollani to see if Kyle recognized the man. Kyle identified the man as the person who had gotten into his truck to take computer parts. Since Pollani had already been convicted, McCormick did not keep the photograph. In preparation for the second trial, though, Kyle told McCormick that Kyle was not sure he could identify Pollani although he gave a description that closely matched Pollani's appearance.

Considering the totality of the circumstances,[6] the district court held that showing the single picture was impermissibly suggestive but that the identification was reliable enough to go to the jury. On each occasion, Kyle watched Pollani enter the back of the truck and take parts from computers. Despite seeing the photograph briefly in March 1997, Kyle gave an accurate description of Pollani before trial and positively identified him at trial (even though Pollani had lost considerable weight). Thus, the district court's finding that the identification was reliable is supported by the evidence and should not be overturned. See Herrera v. Collins, 904 F.2d 944 (5th Cir. 1990)(holding that showing single photograph of suspect to eyewitness did not give rise to substantial likelihood of misidentification even assuming the procedures were impermissibly suggestive).

## MOTION TO SUPPRESS

With respect to the search of Pollani's home, the district court held a hearing on January 8, 1999, and after argument from both parties, denied Pollani's motion to suppress. Pollani contends that the district court clearly erred by (1) not holding a full evidentiary hearing on his motion to suppress evidence seized in the search of his residence, and (2) not finding

---

[6] A court must consider the witness' opportunity to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description, the level of certainty demonstrated by the witness at the time of confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382 (1972).

10

that the affidavit in support of the search warrant contained insufficient and false information.[7]

Pollani claims that the search warrant lacked probable cause because the supporting affidavit did not contain information showing that he knew the computer parts he possessed at one time were stolen. He also maintains that the affidavit was predicated on the hearsay statements of an IBM investigator who did not show (1) that she was reliable or (2) that the information on which she relied was credible.

The totality of the circumstances test governs whether a search warrant is supported by probable cause. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983). The reviewing court looks deferentially at the district court's determination of probable cause and "must construe the affidavit in a common-sense manner." United States v. McKeever, 5 F.3d 863, 865 (5th Cir. 1993)(citation omitted). In this case, the affidavit contained a list of IBM cards with serial numbers that were previously reported stolen from the Burnham Warehouse (the paragraph Pollani objects to), plus six paragraphs describing other electronic devices and computer equipment without serial numbers, and documents and records relating to computers. The affidavit

---

[7] Pollani also maintains that the court should have suppressed the testimony of all witnesses who had entered into plea agreements with the government. This argument is frivolous. Relying on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), Pollani argues that allowing the testimony of anyone who entered a plea agreement with the government violates 18 U.S.C. § 201(c)(2). This court has refused to adopt *Singleton*'s reasoning and holding. See United States v. Webster, 162 F.3d 308 (5th Cir. 1998); United States v. Haese, 162 F.3d 359 (5th Cir. 1998). Thus, Pollani's argument lacks support and is rejected.

11

recites information describing the expertise in computer-related investigations of Diane Hines, a security analyst for IBM. Finally, the affidavit detailed the investigation of IBM computer equipment and indicated that Pollani had sold stolen IBM parts and shipped them in interstate commerce. Thus, even if some of the information in the objected to paragraph was incorrect (e.g., some of the sold equipment could not reasonably be thought to be at Pollani's house), the affidavit contains sufficient evidence to establish probable cause.

In its written order denying Pollani's motion, the district court found that Pollani had not made a sufficient showing that Officer Flores made a knowingly or recklessly false statement in the affidavit, as opposed to an innocent mistake. At the hearing, the district court agreed to hear whatever Officer Flores had to say, but neither party had asked or required him to be present. "[B]oth the burden of production and the burden of persuasion generally rest upon the movant in a suppression hearing." United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984). The defense had the opportunity to examine Flores as to whether he made knowing or reckless statements in his affidavit but did not avail itself of that opportunity. Because Pollani failed to carry his burden of showing that the statements were deliberately false or made in reckless disregard for the truth, and the remaining portion of the affidavit contains sufficient evidence to support a finding of probable cause, the district court was not

12

required to hold an evidentiary hearing.  See <u>United States v.</u> <u>Dickey</u>, 102 F.3d 157, 161-62 (5th Cir. 1996).

**SENTENCING ISSUES**

**1.  Base Offense Level**

After Pollani's first trial, the PSR used § 2F1.1 of the Guidelines (for offenses involving fraud or deceit) to calculate the base offense level at 6 points, with a total offense level of 26 after adjustments.  The PSR prepared after the second trial used § 2B1.1 (for offenses involving theft and transactions in stolen property), resulting in a base offense level of 4 for counts 1 through 13 and a total offense level of 28 after adjustments.[8] Pollani contends that he should have been sentenced under § 2F1.1 because the change was manifestly unjust and barred by the "law of the case" doctrine.

Once it has become the "law of the case," an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.  <u>United States v. Becerra</u>, 155 F.3d 740, 752 (5th Cir. 1998).

But the law of the case doctrine does not apply here, because in Pollani's first appeal, this court never considered his base offense level.  Pollani's previous conviction was reversed and remanded solely on the ground that he had been denied his right to counsel.  The only sentencing issues raised in that appeal,

---

[8]     Pollani  was  charged  with money laundering in the superseding indictment, and as a result of grouping, his total offense level on all counts increased.

concerning the amount of loss and an enhancement for more than minimal planning, were not ruled on in light of the court's disposition of the case. Pollani, 146 F.3d at 274, n.6.

No error, much less reversible error, arises from the district court's decision to use the correct guideline after Pollani's second conviction.

## 2.   The Amount of Loss

This court gives great deference to a district court's loss calculation, not finding it clearly erroneous so long as its factual finding regarding the amount of loss is plausible in light of the record as a whole. United States v. Sutton, 77 F.3d 91, 95 (5th Cir. 1996). "Loss" is defined as "the value of the property taken, damaged, or destroyed," which is ordinarily "the fair market value of the particular property at issue." § 2B1.1, App. n.2.

Pollani contends that either the value of the computer parts listed in the superseding indictment, which totaled $484,550, or the amount of a civil judgment brought by Burnham International against him for $560,000, should have been used to calculate the loss.[9]   The government asserts that neither figure is representative of the fair market value and that Pollani put his victims at risk for the entire loss, not only the amount he actually obtained for the stolen parts.   See United States v. Wimbish, 980 F.2d 312, 316 (5th Cir. 1992), rev'd on other grounds,

---

[9]      If one of these lower sums is adopted as the risk of loss, then eleven or twelve points would be added to Pollani's base level under § 2B1.1(b)(1)(L) or (b)(1)(M).

14

<u>Stinson v. United States</u>, 500 U.S. 36, 40 n.2, 113 S.Ct. 1913, 1916 n.2 (1993)).

At trial, IBM's internal audit analyst, Joe Jacoby, testified that the total value of the parts stolen from Burnham and sold by Pollani was roughly $2.4 million. In this circuit, the owner of property is competent to testify as to its market value. <u>See</u> <u>United States v. Laughlin</u>, 804 F.2d 1336, 1340 (5th Cir. 1986). The testimony of IBM's analyst was supported by the testimony of Agent McCormick at the first sentencing. McCormick gave a detailed account of how he determined the loss to be $2,475,919 and stated that this represented a "conservative" estimate of the amount of loss. At the second sentencing, it was disclosed that Burnham paid IBM over $2.3 million to settle IBM's claim, leaving Burnham as the ultimate victim.

The district court determined the amount of loss to the victim to be $2,475,919. Since the offense involved between $1.5 and $2.5 million, Pollani's offense level was increased 14 points. § 2B1.1(b)(1)(o). Given the testimony of Jacoby and McCormick as to the amount IBM was at risk of losing, the district court's calculation was not clearly erroneous.

### 3. Obstruction of Justice Enhancement

Section 3C1.1 authorizes a two level increase in offense level for obstruction of justice "when a defendant engages in conduct which 'obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.'" <u>United States</u>

v. Graves, 5 F.3d 1546, 1555 (5th Cir. 1993) (quoting § 3C1.1). A district court's finding that a defendant obstructed justice is not clearly erroneous as long as it is plausible in light of the record as a whole. United States v. Powers, 168 F.3d 741, 752 (5th Cir. 1999). "This is particularly true where a sentencing court's imposition of a § 3C1.1 enhancement is based, at least in part, upon an evaluation of a witness' credibility." Id. at 753 (citations omitted).

Pollani asserts that the enhancement for obstructing justice was clearly erroneous since he did not know about the phony invoices that Epps said came from Pollani, and the invoices were not found at Pollani's residence or on his computer. But Epps testified at trial that Pollani had given Epps the invoices after becoming aware of the investigation. According to Epps, Pollani told him that the invoices were to show that computer parts had been bought at an auction for cash. The district court credited Epps's testimony over Pollani's and imposed the enhancement. Pollani's brief fails to cite facts or cases that would undermine the district court's ruling.

### 4. Disparity of Sentence Among Co-Defendants

Pollani also challenges the disparity between his sentence and Epps's sentence, arguing that the district court should have downwardly departed to avoid such an "unjustified" disparity. Pollani received 90 months imprisonment on 14 counts (including money laundering that did not involve Epps) whereas Epps received only 12 months on a single transportation of stolen goods

16

count. Disparity, however "is not proper basis for departure, either upward or downward." United States v. Lawrence, 179 F.3d 343, 351 (5th Cir. 1999)(citation omitted); see also United States v. Davidson, 984 F.2d 651, 656 (5th Cir. 1993).[10] And, the district court noted, the different sentences were appropriate since the two were not charged with identical offenses and "Mr. Epps admitted his guilt and offered substantial assistance to the Government [while] Mr. Pollani continues to disclaim any wrongdoing, which he has a right to do, but that continued insistence in the face of two juries convicting him, I think, places him in a little bit different situation from Mr. Epps." Thus, the court did not err in declining to grant Pollani's request for a downward departure.

For the foregoing reasons, the court did not err or abuse its discretion in the challenged evidentiary rulings, failure to suppress evidence, or sentencing decision. The judgment of conviction and sentence are therefore AFFIRMED.

**AFFIRMED.**

---

[10] Pollani's reliance on Meza v. United States, 127 F.3d 545 (7th Cir. 1997), is misplaced. In *Meza*, the court actually rejected the argument that an unjustified disparity exists when a defendant receives a lower sentence for entering into a plea agreement and providing substantial assistance to the government. Id. at 549. Thus, *Meza* does not undermine current Fifth Circuit precedent.