**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MATTHEW BERCKMANN,
*Defendant-Appellant.*

No. 18-10446

D.C. No.
1:17-cr-00710-SOM-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted July 8, 2020
Honolulu, Hawaii

Filed August 20, 2020

Before: John B. Owens, Michelle T. Friedland, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Owens

# SUMMARY[*]

## Criminal Law

The panel affirmed a defendant's convictions for assaulting his wife with a dangerous weapon and assault of a spouse by strangulation, both of which occurred on federal land, in a case in which the defendant argued that evidence from two other attacks on his wife was improper propensity evidence admitted in violation of Fed. R. Evid. 404(a).

The panel held that the district court did not abuse its discretion by admitting the evidence pertaining to the other attacks as non-propensity evidence. The panel wrote that other acts of domestic violence involving the same victim are textbook examples of evidence admissible under Fed. R. Evid. 404(b), and that the evidence from the two other attacks helped to show that the defendant in this case was not joking around or simply trying to frighten his wife, but rather intended to assault and strangle her. The panel held that there was likewise no error under Fed. R. Evid. 403, given that the evidence of the defendant's other attacks were quite probative of his intent in this case, and that the district court on three occasions instructed the jury that these acts could only be used for the limited purpose of deciding whether the defendant had the state of mind, knowledge, or intent to commit the crimes charged in the indictment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Verna Wefald (argued), Pasadena, California, for Defendant-Appellant.

Michael F. Albanese (argued), Assistant United States Attorney; Marion Percell, Chief of Appeals; Kenji M. Price, United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

**OPINION**

OWENS, Circuit Judge:

Matthew Berckmann appeals from his convictions for assault with a dangerous weapon and assault of a spouse by strangulation, both of which occurred on federal land. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

## I. BACKGROUND

### A. The Assault at Haleakala National Park in Maui

At nearly 7,000 feet in elevation, Hosmer Grove Campground in Haleakala National Park in Maui offers breathtaking sunrises and sunsets, and unmatched views of the stars. But on October 18, 2017, campers there witnessed something that they surely would like to forget.

After setting up a campsite with his wife, Berckmann interrupted the otherwise idyllic vista when he started yelling

---

[1] We resolve Berckmann's arguments pertaining to the sufficiency of the evidence, the effectiveness of counsel, and the reasonableness of his sentence in a concurrently filed memorandum disposition.

at her in an angry, aggressive voice to "get out of here, get out of here."  As his wife began to walk away, Berckmann approached her and yelled "let's do this right now."  He then pushed her to the ground.  As she lay flat on her back, Berckmann walked to a picnic table, grabbed a large kitchen knife, and then returned to his wife, who remained on the ground.  Holding the knife, he straddled her waist and continued to yell at her.  He then leaned forward, positioned his elbow on her shoulder and his wrist across her throat, and lowered his face to her ear.  Berckmann held her in that position for several minutes before standing up and returning to the picnic table.  As his wife regained her composure and walked back to the picnic table, Berckmann continued to yell at her, all the while banging the knife on the table repeatedly.  He also yanked a glass beer bottle from his wife's hand, smashed it on the table, and pointed it at her.  Berckmann snatched a cigarette from his wife's mouth and threw it on the ground.  Two campers witnessed the assault and called 911, but they did not intervene because they feared for their own safety.  A Park Ranger and Maui police officers eventually arrived and arrested Berckmann.

## B.  Other Attacks by Berckmann Against His Wife

This was not the only time that witnesses had seen Berckmann attack his wife.  In October 2016, a police officer in New Jersey saw Berckmann punching his wife and heard him yell "I'm going to fuckin' kill you, you fuckin' bitch."  The officer later found her hiding in a closet, crying, with her eye swollen and red marks and bruises on her body.  And, in December 2017—two months after the Hosmer Campground assault—a crowd of people at a Waikiki beach intervened to stop Berckmann after he picked his wife up by the neck and flung her into a bench.

## C. Procedural History

For his attack at the Hosmer Campground, an indictment charged Berckmann with (1) assaulting his wife with a dangerous weapon (the knife) in violation of 18 U.S.C. § 113(a)(3), and (2) assaulting his wife by attempting to strangle her in violation of 18 U.S.C. § 113(a)(8).

Berckmann moved pretrial to exclude evidence from the New Jersey and Waikiki attacks, arguing that it would be improper propensity evidence. The government responded that these separate incidents were admissible under Federal Rule of Evidence ("Rule") 404(b) to prove Berckmann's intent to assault and attempt to strangle his wife at the Hosmer Campground. After hearing extensive argument from both sides, the district court agreed with the government that the evidence could be admitted with a limiting instruction to demonstrate Berckmann's intent.

At trial, defense counsel told the jury in opening statement that Berckmann did not assault or attempt to strangle his wife, and that his wife "smoked a cigarette, had a drink, and she went back to the table and continued talking with Mr. Berckmann as if nothing happened." The jury heard from the two eyewitnesses to the Hosmer Campground assault, as well as from the law enforcement officers who responded. It also heard from an eyewitness to the Waikiki attack, and law enforcement officers who responded to the New Jersey and Waikiki incidents. It returned a guilty verdict as to both counts, and the district court sentenced Berckmann to 41 months in prison.

## II.  DISCUSSION

### A.  Standard of Review

We review a district court's admission of evidence under Rules 403 and 404(b) for abuse of discretion. *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010) (Rule 404(b)); *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) (Rule 403).

### B.  The Evidence Pertaining to the New Jersey and Waikiki Attacks was Properly Admitted

Rule 404(a) bars admission of "[e]vidence of a person's character or a trait of character . . . for the purpose of proving action in conformity therewith on a particular occasion." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (citation omitted).  However, Rule 404(b) makes an exception to that general rule for prior act evidence that proves "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Rule 404(b) is "one of inclusion," and evidence of prior acts that "bears on other relevant issues [apart from character traits]" is admissible.  *United States v. Cruz-Garcia*, 344 F.3d 951, 954 (9th Cir. 2003) (citation omitted).

Prior "bad act" evidence may be admissible under Rule 404(b) if:

> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) . . . the act is similar to the offense charged (similarity).

*United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted) (parentheticals added). The burden is on the government to prove that the evidence satisfies these requirements. *United States v. Martin*, 796 F.3d 1101, 1106 (9th Cir. 2015). Berckmann does not challenge the recency or sufficiency prongs—only materiality and similarity. Here, the materiality and similarity analyses are virtually identical, so we examine them together.

Other acts of domestic violence involving the same victim are textbook examples of evidence admissible under Rule 404(b), and courts have permitted this evidence under a variety of theories. Some have explained that additional assaults are admissible as a "critical part of the story" that clarifies the motive behind the charged crimes.[2] Other courts have allowed this evidence to illustrate the "history of [the] relationship" between the defendant and victim, which speaks to a defendant's intent.[3] These cases say essentially the same thing—prior (and subsequent) acts of violence towards the identical victim can shed light on the mindset of the defendant during the charged crime, such as whether there was a grudge between the two, a desire for payback of some sort, or that the defendant had the intent to exert control over this particular victim through violence. *See, e.g.*, *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir. 1986)

---

[2] *See, e.g.*, *United States v. Covington*, 565 F.3d 1336, 1342–43 (11th Cir. 2009); *see also United States v. Farish*, 535 F.3d 815, 820 (8th Cir. 2008) (prior domestic abuse evidence admissible to explain the defendant's motive to commit arson against a friend of the defendant's abused wife, who was sheltering the wife).

[3] *See, e.g.*, *United States v. Johnson*, 860 F.3d 1133, 1142 (8th Cir. 2017) (prior assault convictions admissible to "help explain the history" between the victim and the defendant "from which [the defendant's] intent to commit violence upon [the victim] is derived").

(prior assault involving same victim admissible under Rule 404(b) as evidence of "[r]ising animosity" that "could easily provide the motive for an assault").**[4]**

Here, the district court ruled that evidence of these other attacks was admissible as non-propensity evidence. The evidence helped show that Berckmann was not joking around or simply trying to frighten his wife, but rather intended to assault and strangle her. Under our case law, that ruling was not an abuse of discretion.

In *United States v. Hinton*, the defendant was charged with assault with the intent to commit murder. 31 F.3d 817, 819 (9th Cir. 1994). The government introduced evidence of prior assaults to demonstrate that the defendant intended to stab the victim, and not merely scare her. *Id*. at 822. We held that "evidence of a prior incident involving the same victim has 'probative value in disproving claims that the defendant lacked intent'" and upheld the admission of the previous attacks. *Id.* (quoting *United States v. Lewis*, 837 F.2d 415, 419 (9th Cir. 1988)).

---

**[4]** Courts also have permitted other acts of violence as evidence to explain a victim's reaction—or apparent non-reaction—after being assaulted. *See, e.g.*, *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (evidence of prior physical abuse admissible under Rule 404(b) to demonstrate how a victim "could be afraid enough to submit to such actions quietly"); *United States v. Faulls*, 821 F.3d 502, 508–09 (4th Cir. 2016) (domestic violence admissible under Rule 404(b) to explain the defendant's "control and domination" over his victim, and to explain why the victim remained with the defendant); *United States v. Plumman*, 409 F.3d 919, 928 (8th Cir. 2005) (prior assaults admissible under Rule 404(b) because the "physical assault evidence . . . provide[d] a reason why [the victim] did not contact law enforcement"). Because the government did not pursue this theory at trial or on appeal, we do not analyze it here.

*Hinton* controls the outcome here.  Both counts required the government to prove that Berckmann intended to harm his wife.  Count 1, assault with a dangerous weapon, mandated proof of an intent to cause bodily harm.  *See* 18 U.S.C. § 113(a)(3); 9th Cir. Model Crim. Jury Instr. 8.7. And while strangulation is a general intent crime, Count 2 also charged attempted strangulation, and attempt crimes always require specific intent.  *See, e.g.*, *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1190 (9th. Cir. 2000) (en banc) ("'[A]ttempt' is a term that at common law requires proof that the defendant had the specific intent to commit the underlying crime[.]").  Other courts agree.  *See, e.g.*, *United States v. Shillingstad*, 632 F.3d 1031, 1035 (8th Cir. 2011) (holding that prior assaults were admissible to prove intent in assault with a dangerous weapon prosecution, and to disprove accident theory); *United States v. Rodriguez-Berrios*, 573 F.3d 55, 64 (1st Cir. 2009) ("The evidence of appellant's intentional physical harm of the victim in the past had 'special relevance' because it was probative of his intent to cause her harm at the time he seized her car." (citation omitted)).  Berckmann contested intent at trial, making proof of his intent from these other incidents fair game.

Berckmann relies on *United States v. Bettencourt* and *United States v. San Martin* to argue that the New Jersey and Waikiki incidents were inadmissible propensity evidence. Yet neither of these cases involved attacks on the same victim, which is what distinguishes this case and which is often a defining feature of domestic violence cases.

Specifically, in *Bettencourt*, the defendant was charged with interfering with a Secret Service Agent in the performance of his official duties, and the trial court admitted evidence that he was arrested for interfering with different local officials at a different time.  614 F.2d 214, 215

(9th Cir. 1980). Our court held that the admission was erroneous, as the other incident shed very little light on the defendant's mindset towards the particular Secret Service Agent and smacked of classic propensity: there was "no rational connection between the two occurrences," and the testimony was only "slightly probative of Bettencourt's intent at the time of the alleged crime." *Id.* at 217.

The same was true in *San Martin*, where six FBI agents attempted to arrest the defendant pursuant to a warrant. 505 F.2d 918, 920 (5th Cir. 1974). In an effort to evade arrest, the defendant turned and struck one of the FBI agents on the shoulder "with his arm or elbow." *Id.* The defendant was later charged with one count of willful and forcible assault. *Id.* At trial, where the sole issue was whether the defendant "intended to strike" the FBI agent, the government presented evidence of the defendant's three prior misdemeanor convictions—one for resisting arrest, one for opposing a public officer, and one for assault and battery. *Id.* at 921. Not only did these prior convictions involve entirely different victims, but they occurred nearly ten years before the charged assault. *Id.* at 922. Again, these prior convictions did not help the jury determine the defendant's mindset towards the FBI agent, other than to suggest that he had the "disposition or character" to attack law enforcement officers. *Id.* at 923.

Simply put, *Bettencourt* and *San Martin* are examples of classic character evidence. The other acts were not introduced to help the jury understand the relationship between the defendant and a particular victim, but rather to characterize the defendant as someone who has a propensity to be violent towards law enforcement.

As we made clear in *Hinton*, neither of these decisions is particularly relevant to cases like this one involving attacks

on the same victim. *See, e.g.*, *Hinton*, 31 F.3d at 822 (holding that the concerns outlined in *Bettencourt* and *San Martin* were "inapplicable where . . . the charged and prior conduct were part of a pattern of abuse involving the same victim and . . . similar *modus operandi*").

Nor was there error under Rule 403, which permits district courts to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013); *see also Bailey*, 696 F.3d at 799. As discussed above, the evidence of Berckmann's attacks on his wife in New Jersey and Waikiki were quite probative of his intent at Hosmer Campground, and probative evidence is necessarily prejudicial to some degree. To the extent that this evidence could have gone too far if not cabined, the district court on three separate occasions instructed the jury that these acts were not charged crimes and could only be used for the "limited purpose of deciding whether the defendant had the state of mind, knowledge, or intent to commit the crimes charged in the indictment." Considering the particularly relevant nature of the incidents between Berckmann and his wife, the district court did not abuse its discretion in admitting this evidence over a Rule 403 objection. *See, e.g.*, *United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) (highlighting the importance of limiting instructions, and recognizing that "even where evidence is *highly* prejudicial, it is not necessarily *unfairly* prejudicial" (citation omitted)).

Because the district court properly admitted the evidence of the New Jersey and Waikiki attacks, we affirm.

**AFFIRMED.**